## CHRISTIAN PROUGH. *v.* JAMES ENTRIKEN.

1. Where a prosecution is instituted and the defendant is arrested for the purpose of extorting money from him, in an action by him for malicious prosecution he need not prove malice or want of probable cause, as in such case the law implies both.

2. Proof that one, arrested on a charge of fraud, was compelled to pay money to the prosecutor while in prison and then to confess judgment for the money, it being held out to him from the first that, if the money alleged to be due was paid, he should not be further prosecuted, is such proof of want of probable cause that the law would infer malice in instituting the criminal proceeding, instead of a civil action.

3. Such proof is not conclusive, but *primâ facie*, and, in the absence of satisfactory evidence to the contrary, is conclusive. As *primâ facie* evidence, it throws the *onus* of proving probable cause on the defendant.

4. When there is no debt due at all, or when the demand is unfounded and unjust, this evidence is conclusive—but where there is a debt (and this the creditor is bound to show), it is *primâ facie* only.

5. That there is a debt must be shown by other evidence than by confession while in prison or under arrest, or by judgment confessed in pursuance of a compromise or agreement, or by coercion arising from the criminal prosecution itself.

ERROR to the Common Pleas of Huntingdon.

*May* 29. This was an action on the case for malicious prosecution, in which Christian Prough was plaintiff, and James Entriken was defendant. The facts of the case were these:—

'On the 12th August, 1845, Entriken instituted a prosecution against Prough and his brothers for " conspiracy to secrete away Prough's property, in order to cheat and defraud his creditors." Upon the warrant issued by the justice the defendant was arrested and committed to the county jail.

Prough, it would seem from the evidence, was indebted to Entriken to a considerable amount. He was a tenant-farmer, apparently on a small scale. A few days before the arrest he ceased operations on the farm, and set about selling and disposing of his property, with the design of going to the west. He sold it to one of his brothers. The second day after this sale he started for a place near the county line, to leave for the west, which he purposed doing without settling with his creditors. In consequence of some disappointment he returned to his father's, where he was arrested.

Upon being arrested he was taken to prison, where he was asked by the keeper if he would pay the debt: he said he would not. The keeper told him there was no other way than to go up stairs, he could do nothing else with him. They went up, and when the key was turned upon him, Prough said he would pay it, and did so, not without some hesitation and denial of his ability. Upon being discharged, and after they had settled the prosecution, Prough went before the justice of the peace and confessed judgment for a certain amount, and a few days after, confessed judgment in a civil suit, which had been instituted before the same justice, on the same day that the prosecution had been commenced. The paper-book which came to the reporter's hands was defective in the evidence relating to what took place between the arrest and the settlement of the prosecution. The verdict was for the defendant.

All that is material in the points presented below, or in the charge of the court, which was delivered by TAYLOR, President, will be found in the opinion of this court.

*Wilson* and *Williamson*, for the plaintiff in error.—Compelling Prough to give money to Entriken, and to confess judgment while under arrest on the warrant for an alleged criminal offence, is *per se* conclusive evidence of malice and of want of probable cause:

2 Greenleaf Ev. § 452; 1 Ch. Plead. 389, 129 ; 6 East, 464, 473;
2 East, 107; 5 Espinasse's Rep. 214; Best on Presumptions, 177;
2 Starkie's Ev. 417.   There is no evidence that Prough owed Entri-
ken anything.   The confessions and admissions extorted from
Prough under duress are of no weight whatever.   Story's Equity,
§ 239; 2 Starkie's Ev. 27.

*Bendict* and *Scott,* contrà.—Malice and want of probable cause
must be established before recovery.   Munns *v.* Dupont, 2 Brown.
App. 42; Lyon *v.* Fox, Ib. 69; 2 Starkie Ev. tit. *Mal. Pros.*
907–917 ; 2 Greenleaf Ev. tit. *Malicious Pros.;* Wilmarth *v.*
Mountford, 4 W. C. C. R. 79; Seibert *v.* Price, 5 W. & S. 438.
Probable cause is a good defence; Herman *v.* Brinkerhoof, 8 W.
241 ; 2 Espin. N. P. 126; 1 Camp. 199; Weinberger *v.* Shelby,
6 W. & S. 336; 2 Leigh's N. P. 1294.

The opinion of this court was delivered by

Rogers, J.—Although the learned judge throughout his charge
evinces a strong leaning in favour of the defendant, and has inti-
mated his opinion to that effect in language, which it was difficult
for the jury to misapprehend, that, as has been repeatedly ruled, is
no cause of reversal ; nor do we perceive anything else in the trial
to which just exception can be taken, except the answer to the
plaintiff's second point.   The court was requested to instruct the
jury, that if they believed that the defendant instituted the prose-
cution and made the arrest for the purpose of extorting money from
the plaintiff, it is not necessary for the plaintiff to prove either ma-
lice or want of probable cause ; as in such case the law implies
both.   "This (say the court), as a general rule, is the law ; but
we are of opinion that it is not applicable to the facts of this case.
Where the offence charged is concealment or transfer of property,
with intent to defraud creditors, the fact that the prosecutor was a
creditor, or the additional fact that he agreed to compromise and
suspend the prosecution on his delivery of the concealed property
to the creditor, or on payment to himself of his debt acknowledged
to be due and just, would not release the party accused in an action
brought by him for a malicious prosecution from the necessity of
proving malice and want of probable cause.   The rule only applies
to the case of a prosecution commenced for the purpose of extorting
money fraudulently."   Taking the answer of the court together, it
amounts to a negation of the plaintiff's proposition.   As I under-
stand the answer, the court are of opinion that the rule (which is
admitted to be correct) only applies when money is extorted under

pretence of debt, or claim made to property when no debt is due, nor any valid right to the property; that when a debt exists, or the claim to the property is just, there cannot be extortion within the meaning of the point, and that consequently it does not relieve the plaintiff from the necessity of giving other proof of malice, and want of probable cause. In the view we take of the case and its relation to the 20th section of the act of 12th July, 1842, the point assumes an importance to which otherwise it would not be entitled. By that act ( which is in derogation of the common law, and the policy of which has been doubted by some whose opinions are entitled to great respect, because liable to great abuse), it is enacted that secreting, assigning, conveying, or otherwise disposing of property with intent to defraud creditors, or to prevent property from being made liable for debts, &c., shall be deemed a misdemeanor, and the party offending is visited with the penalty of forfeiture, and payment of a sum not exceeding the value of the property or effects so secreted, assigned, or conveyed, and moreover to suffer imprisonment not exceeding one year. The act is intended to punish a criminal offence, not to be used as a means of collecting debts, however just, and to suffer it to be perverted to that purpose will necessarily lead to great injustice and oppression. We are not without reason for believing that it has already been used as an instrument to wring money from the sympathy and fear of friends, as well as a means of extortion from the timid, on pretended and unjust demands. A stranger from another and distant state may be, and has been, compelled to pay unjust, or at least contested and doubtful claims, rather than encounter the risk, expense, and mortification attending a prosecution for fraud, knowing that the charge may be supported by the oath of the prosecutor himself. When, therefore, we find that the creditor, instead of pursuing the supposed criminal to judgment, stops short on receiving the amount of his demand, and discharges the accused from any further proceedings, what is the rational inference ? What are we to conclude but that his design was to collect his debt, rather than punish the offender, in promotion of the very object and intention of the act ?

In the case in hand, the plaintiff was compelled to pay money to the defendant while in prison under a charge of fraud, and afterwards to confess judgment for the money, before the justice who issued the warrant at his instance. The prosecutor, from the first, held out the temptation, that, if the money alleged to be due was paid, he should not be imprisoned, or further prosecuted. In view

of these facts, which were clearly proved, the court ought to have instructed the jury, that the plaintiff had furnished proof of want of probable cause, from which the law would infer that the prosecutor was actuated by malice, or improper motives, in instituting a criminal proceeding, rather than a civil action. To sustain an action for a malicious prosecution (as the court properly instructed the jury), the plaintiff must prove that the prosecution was instituted maliciously, and without probable cause; but the question is, what is proof of want of probable cause, from which malice may be inferred. Where an act be unlawful, the law itself infers an evil intent: King *v.* Phillips, 6 East, 463. So, where an action is for abusing the process of the law, in order illegally to compel a party to do a collateral thing, such as to give up his property, or to pay a debt, it is not necessary to aver and prove that the process improperly employed is at an end, nor *that it was sued out without reasonable or probable cause:* 2 Greenleaf's Ev. § 452; Grainger *v.* Hill, 4 Bingham, N. C. 212; 3 Scott, 561, S. C. The law will not suffer a man to use unlawful means to effect even a just object, without exposing him to all the consequences arising from his improper act. We do not wish it to be understood as conclusive, but *primâ facie;* and, in the absence of satisfactory evidence to the contrary, it amounts to conclusive proof. The effect of the rule, and we believe it must be salutary, will be to throw the onus of proving probable cause on the defendant. A proper regard to the rights and safety of debtors exposed to a charge easily made, and sometimes difficult to explain, demands stringent rules.

The use of a criminal proceeding, as an ordinary process for the collection of debts, is a practice which needs restraint rather than encouragement.

Nor can the creditor have any just cause of complaint; for, before he institutes a criminal prosecution against his neighbour, a decent regard to justice and fair dealing requires he should investigate the charge, and be prepared to prove that there was reasonable ground of suspicion, or belief, that the debtor was about to convey or conceal his property, to elude the grasp of creditors. We also wish to notice this distinction: where there is no debt due at all, or where the demand is unfounded and unjust, the evidence is conclusive; but, where there is a debt (and this the creditor is bound to show), it is *primâ facie* only, and may be rebutted by other proof in the cause. That there is a debt, however, must be shown by other evidence than by confession while in prison or

H

under arrest, or by judgment confessed in pursuance of a compromise or agreement, or by coercion arising from the criminal prosecution itself.

Judgment reversed, and a *venire de novo* awarded.