## Schmidt *et al.* versus Weidman.

1. W., an attorney, was employed by S. to collect a note; he obtained judgment and issued execution. S. being absent, W. compromised with the debtor, and received a less sum than was due on the judgment. W. retained his fee for services in this case and in others, and deposited the balance with another attorney to be paid to S., and so informed S. The other attorney did not pay the balance when demanded. T. had W. arrested for embezzlement. *Held,* in an action for malicious prosecution, the judge below could not be required to give his opinion as to whether W. was civilly liable to S. on account of the compromise.

2. Civil liability of W., if it existed, was not probable cause for instituting criminal proceedings, nor could it bear on the question of malice.

3. If one commences a criminal prosecution merely for the purpose of compelling his debtor to pay a just debt, it is primâ facie evidence, both of want of probable cause and of malice, and shifts the *onus* on the defendant.

November 8th and 9th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 88, to October and November Term 1869.

This was an action on the case for malicious prosecution and false imprisonment, commenced August 27th 1867, by Anthony Weidman against Ludwig Schmidt, Michael Berger and Jeremiah Gumbert. A nolle prosequi was afterwards entered by the plaintiff as to Gumbert.

The plaintiff was a practising attorney in Pittsburg. Some time in the early part of 1867 Schmidt, one of the defendants, was indebted to Berger, the other defendant. At or about the same time Schmidt held a judgment-note for $250 against the firm of Bassett & Morrow. By an arrangement between Berger and Schmidt, Berger was to take an assignment of the note on account of his claim, Schmidt to be at the expense of its collection and to guaranty its payment. The note was assigned to Berger and put into the hands of the plaintiff for collection. Weidman entered judgment on the note and issued execution. About the time of the sheriff's sale of Bassett & Morrow's property, Schmidt was absent from the city of Pittsburg, and Weidman, judging from information received from the sheriff and others, that there was doubt whether the judgment could be realized, accepted from the defendants $250 in full of the judgment, interest and costs.

This occurred about the 1st of August 1867. The plaintiff being about to change his residence to the city of New York, and Schmidt still being absent, the plaintiff left $100 of the sum received by him on the judgment with Mr. Dicken, another lawyer in Pittsburg, to be paid to Schmidt, notified Schmidt that the money was with Dicken, and directed him to call on Dicken for it. The plaintiff claimed that the difference between the $250 and the $100 had been appropriated to the costs of the judgment and execution and to the payment of his fees for professional services in this case and in other business of Schmidt. The plaintiff immediately after removed to New York. Schmidt, on his return to Pittsburg, called upon Dicken for the money: he did not obtain it. The evidence was conflicting as to whether Dicken told Schmidt that plaintiff had deposited no money with him or whether he declined paying Schmidt for some other reason. Schmidt then went to Harrisburg, and on the 20th of August made an information before the mayor of that city, charging that the plaintiff had received the amount of a note for $250 placed in his hands for collection, and that "he did wilfully and feloniously appropriate the same to his own purposes and use." On the same day Schmidt made an affidavit before the same magistrate that " Anthony Weidman is a fugitive from justice, and that from information received, he has just cause to believe and that he does believe, that the said Weidman is in the state of New York." He then obtained a requisition from the Governor of Pennsylvania on the Governor of New York for the delivery of the plaintiff as a fugitive from justice. Gumbert, who was a police officer of Pittsburg, accompanied Schmidt to Harrisburg, was appointed agent to execute the Governor's requisition, and in company with Schmidt went to New York city. The plaintiff was arrested there, and at once agreed to return to Pittsburg in custody of Gumbert, without requiring a warrant of delivery from the Governor of the state of New York. He was brought to Pittsburg and taken before the mayor of the city, and on hearing was discharged.

On the trial before Hampton, P. J., there was much evidence as to the circumstances stated above; there was evidence also tending to show that Berger furnished money to aid in the arrest and prosecution of the plaintiff; that the prosecution was instituted for the purpose of compelling the payment of the $100. The plaintiff gave evidence that when Schmidt called on Dicken for the $100, Dicken told him that he (Dicken) had received it from the plaintiff and that when Schmidt satisfied him that he was the proper person it should be paid ; and that in none of the interviews between Dicken and Schmidt, did Dicken assert that the plaintiff had not deposited the money with him. The defendants gave evidence that when Schmidt demanded the money of Dicken, he declared that the plaintiff had left no money with him. They also

gave evidence in relation to the circumstances of the assignment of the note and the employment of the plaintiff to collect it, and that Schmidt did not owe him for other professional services. There was also evidence on both sides on the questions of malice and want of probable cause. In the course of the trial there were several bills of exception to evidence, which were not discussed or passed on in the Supreme Court.

The following are points submitted by the defendants, with their answers:—

"1. An attorney at law has no power or authority to compromise the case of his client, without the express assent and authority of his client.

"2. Under the facts the plaintiff had no power to make the abatement and deduction made by him in settling the judgment of Ludwig Schmidt, for use of Michael Berger v. Bassett & Morrow. And as soon as he gave the receipt to the defendants and satisfied the said judgments, he was liable to be charged with the full amount of debt and interest, less his reasonable fees and compensation for entering up the judgment and collecting the same."

The court answered : " These points have nothing to do with the case."

"3. The record of the judgment, Schmidt for use of Berger v. Bassett & Morrow, offered in evidence by the plaintiff, shows that the money due thereon belonged to Michael Berger, and that the plaintiff in entering and collecting said judgment was the attorney of Michael Berger.

"4. It was the duty of the plaintiff, in a reasonable time after he collected the money for said judgment, to have notified his client Michael Berger, and to have remitted the money or paid over the same to him."

The court answered : " This would be the law, if Mr. Berger had not appointed Schmidt his special agent to take the note to his attorney and have it collected, and he, Schmidt, was to receive the money and pay it over to him, as he did not want to have any trouble about it. This is Berger's own testimony here on the stand, and it is a little surprising that such a point should be pressed."

"5. If the plaintiff did not pay over the money to Michael Berger, nor give him notice that he had received the same, but paid the whole or part of it to a stranger, without the knowledge or consent of Michael Berger, that such payment or deposit by the plaintiff was no release or discharge of his liability to his client, Michael Berger.

"6. Under the record evidence (to wit, the judgment Schmidt for use, &c. v. Bassett & Morrow), the plaintiff had no legal right to apply any of the proceeds of said judgment collected by him as an attorney, to the indebtedness of Ludwig Schmidt to him,

[Schmidt *v.* Weidman.]

the plaintiff. And if he did so, it was an embezzlement of the money of Michael Berger, within the meaning of the Act of Assembly."

The court answered: "We have before stated, that whether Weidman retained more than he was entitled to for his fees, cannot be determined in this action. The repetition of this question in so many different ways in these points, makes it look a little as if the prosecution had been commenced for the purpose of collecting money alleged to be due from Weidman, which he denied."

" 10. The note in question being, as the record shows, the property of Michael Berger, the plaintiff, after collecting the same, was bound to pay over to Berger, or to his agent Schmidt, the full proceeds, deducting only any claims that he might have against Berger, but no claims against Schmidt."

The court answered: " These facts are already sufficiently answered."

The verdict was for the plaintiff for $1200. The defendants took out a writ of error. They made a number of assignments of error, amongst which were the foregoing answers to their points.

*J. L. Koethen* and *J. Barton*, for plaintiffs in error, referred to Seibert *v.* Price, 5 W. & S. 439; Beach *v.* Wheeler, 6 Casey 72; Campbell *v.* Boggs, 12 Wright 524; Stokely *v.* Robinson, 10 Casey 318.

*B. F. Lucas* (with whom were *A. G. Lucas* and *A. M. Brown*), for defendants in error, referred to Prough *v.* Entriken, 1 Jones 81; Smith *v.* Ege, 2 P. F. Smith 419; Cotten *v.* Huidekoper, 2 Penna. R. 153.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—The assignments of error are twenty-three in number. However, as the counsel for the plaintiffs in error have very properly, in their brief of argument, relied only upon two points, we may dismiss the others without examination.

The first of these is, that the court erred in refusing to affirm the several points of the defendants below, to the effect that Weidman had no authority to compromise the claim which the defendants put in his hands for collection; that he was really attorney for Berger, and not for Schmidt; that his deposit of the money in the hands of Dicken did not discharge his liability; that he had retained more money than he was entitled to for fees, and that he had in other respects made himself civilly responsible to the defendants.

The plaintiff below was an attorney at law, and brought this action against the defendants to recover damages for a malicious

[Schmidt *v.* Weidman.]

prosecution. It appeared that Schmidt was indebted to Berger for board, and having in his possession a note of a third person for $250, he passed it to Berger, who agreed to accept it, provided Schmidt would be at the trouble and expense of collecting it. For that purpose Schmidt placed it in the hands of Weidman, the plaintiff, who sued, obtained judgment, and issued execution : but in the exercise of what he supposed a sound discretion, in the absence of Schmidt from the city, compromised the claim by accepting the face of the note without interest and costs. Schmidt being absent, and Weidman about to remove and settle in New York, he deposited $100, after deducting thereout the costs he had paid and the amount of fees due him by Schmidt in that and other business which he had transacted for him, in the hands of another member of the bar, J. Charles Dicken, and addressed a note to Schmidt informing him that he had done so and requesting him to call on Dicken for the money. This note was delivered to Schmidt when he returned to the city, and he did accordingly call on Dicken. Whether Dicken then denied or admitted that he had the money was a matter upon which the evidence was contradictory. It was left to the jury to say, and as it was to some extent the turning point on the question of probable cause, we must conclude from the verdict, that they believed that he had admitted it, but put off the payment for some reason, whether good or bad is immaterial. The defendants immediately commenced a criminal prosecution before the mayor of Pittsburg, took out a warrant; one of them proceeded, in company with an officer, to Harrisburg, there procured a requisition on the Governor of New York, went to the city of New York, where Weidman was arrested, and agreed to accompany the party to Pittsburg without waiting for authority from the Governor of New York. On their arrival at Pittsburg, after a hearing before the mayor, Weidman was discharged.

It is evident from this statement that the learned judge below could not lawfully be required to give his opinion to the jury as to whether Weidman was civilly responsible to Schmidt or Berger or to what extent. Such liability, if it existed to its fullest extent, was not probable cause for instituting a criminal proceeding, nor could the resolution of the legal points presented have borne upon the question of malice, or in any way have assisted the jury in determining the issue. To have affirmed them would in all probability have misled them by turning off their attention from the true questions in the cause. They had all the facts before them, and it might be assumed that the defendants honestly believed that Weidman was liable to the full extent claimed, whether in law he was so or not. That would not show probable cause for the institution of a criminal prosecution for embezzlement, unless there were some facts tending to create a belief that Weidman had embezzled the money. On the contrary, if a party commences a

13 P. F. SMITH—12

[Schmidt *v.* Weidman.]

criminal proceeding merely for the purpose of compelling his debtor to pay a just debt, it is primâ facie evidence both of want of probable cause and of malice, and shifts the onus upon the defendant: Prough *v.* Entriken, 1 Jones 81. Whether the facts in evidence were sufficient to induce a reasonable man, not actuated by passion, prejudice or other improper motive, to believe that the plaintiff intended fraudulently to apply the money he had collected to his own use, was fairly submitted to the jury by the learned judge below.

The second ground relied on is the answer to the fifth point. The learned judge remarked, after answering the point, that the repetition of the question whether Weidman retained more than he was entitled to for fees, in so many different ways, in the several points, made it look a little as if the prosecution had been commenced for the purpose of collecting money alleged to be due from Weidman, which he denied. Such a remark is certainly not to be approved. But we cannot see that the defendants could have been damaged by it. The language of a judge in referring to the course of defence is no more to be critically scanned than his comments upon the evidence, provided it sufficiently appears that the questions of fact were fairly submitted to the jury. Now the judge distinctly put it as a question of fact exclusively for them, "were the defendants actuated by an honest zeal for the public morals, or was it done for the purpose of extorting money, which they alleged was due and improperly held by the plaintiff? Do or do not the facts in evidence show that Schmidt's sole aim and object was to extort from Weidman the money he had collected?" If the remark of the judge is open to criticism so was the course of the defence in presenting the same point in so many different forms, a course always embarrassing to a judge called on suddenly to answer. We see no error in this record for which we ought to reverse.

Judgment affirmed.