# Wenger *v.* Phillips.

*Malicious prosecution—Advice of district attorney—Statute of limitations.*

An action for malicious prosecution cannot be sustained where it appears that the prosecution was commenced by the advice of the district attorney, and that this advice was sought in good faith and was based upon a full disclosure of all the facts known to the prosecutor. That the binding over was after the prosecution was barred by the statute of limitations, does not make the defendant liable, unless it appears that he had persisted in the prosecution after he knew it was barred.

*Malicious prosecution—Evidence—Use of criminal process to collect debt.*

Proof that a criminal process had been made use of as a means for the

collection of a debt, is not conclusive in establishing the want of probable cause and the existence of malice. It is prima facie only, and while sufficient to shift the burden of proof to the defendant it may be rebutted by other proofs.

Argued Feb. 5, 1900. Appeal, No. 192, Jan. T., 1899, by plaintiff, from judgment of C. P. Chester Co., April T., 1898, No. 58, on verdict for defendant, in suit of Jonathan Wenger v. E. Vinton Phillips. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for malicious prosecution. Before HEMPHILL, P. J.

At the trial it appeared that in May, 1897, the plaintiff procured the arrest of defendant for obtaining goods by false pretenses. This prosecution, however, was not pushed at the time. Subsequently on January 26, 1898, the defendant caused the plaintiff's re-arrest on the same charge, and defendant was confined in the county jail until February 17, 1898, when he was released on habeas corpus proceedings, on the ground that the offense had been barred by the statute of limitations. Defendant claimed, that he had instituted the second prosecution upon the advice of the district attorney, after a full disclosure to him of all the facts.

The court charged in part as follows :

[I do not recall any testimony in this case which goes to show, or which shows, that Mr. Phillips had any knowledge whatever in regard to the statute of limitations at the time of this proceeding. He upon the witness stand, as I recall the testimony, said that he had no knowledge of the statute being a bar, or of there being such a statute ;] [2] and when he called upon the district attorney, which it was right and proper for him to do, because evidence of that character tends to satisfy the jury that a man is not acting from malicious motive when he goes to the proper authority and asks for advice, it shows that he is cautious and prudent, if it be believed and if that advice be followed after a full and truthful statement of all the facts if laid before the advising party ; he says that he went before the district attorney and laid all these facts before him ; that the district attorney did ask him something about the time when the offense was committed but not in such a way as to give him to

understand, or to cause him to be informed that it was with a view of ascertaining whether the statute of limitations had acted as a bar; and that after being advised by the district attorney that he had a good cause of action and that it was one in his judgment that should be prosecuted, that, acting on that advice, he went and made the complaint before the squire, had the warrant issued and instituted these proceedings. If he had probable cause,—if you believe the statement that these misrepresentations were made, this was clearly within the statute —two years had not elapsed, because this affidavit, this warrant, was sworn out some time in May, 1897, I think, and the statute of limitations would not be a bar until some time in January, 1898—early part of January, 1897; so that there was no improper or illegal action on the part of Mr. Phillips in this transaction, unless you find that his story was not a truthful one— unless you find that he had not probable cause—that these false representations were not made; or, on the other hand, you credit the statements made by Mr. Wenger that this was a trade of cigars for flour. Now, I say, so far there was nothing illegal or improper, unless there was that want of probable cause to which I have called your attention before. After the arrest and the hearing, and at the hearing, Mr. Phillips's statement is that Wenger said he did not want to go to jail and asked him whether something could not be done—whether it could not be fixed up—that not being conversant with the law Mr. Phillips gave the matter to the squire and he told him that it came in the category of those cases which parties were permitted to settle, and if they could make any settlement or agreement between themselves, they had the power to do so.

After a conference between the two—I think Squire McClintock says that they retired outside of his office, or into another room—after a conference between the two Mr. Phillips returned and said that he had agreed to allow Wenger to go without sending him to jail provided he would give him a note which he would sign himself and get good security upon for the payment of $50.00—not the whole amount but a compromise amount—within two years. Mr. Phillips does not, as I recall it, add interest, but the note as produced here shows that it was to bear interest and that Wenger was to pay the costs.

Wenger does not deny that that took place, excepting he

said he was not the anxious party to be rid of this prosecution; he did not ask Mr. Phillips or the squire whether it could not be settled or adjusted, but that the suggestion came from Mr. Phillips himself. You will say which is the more probable to be true, that which is testified to you here as being a fact by Mr. Phillips and by the squire, or Mr. Wenger; and you will bear in mind that Mr. Wenger was the party that was to go to jail; and say whether it was more likely that he would be anxious to effect a settlement of this matter to gain his freedom, or whether it was more likely to come from Mr. Phillips for the purpose of securing his money. This is the argument presented here on the plaintiff's side as being the motive, the inducement, for the proposition coming from Mr. Phillips. After he was released at that time, as I have already said, nothing was done until Mr. Phillips learned of his being cleaned out by the sheriff; and after his conference with the district attorney he then told the justice, as I recall the testimony, Mr. Phillips said he did not recollect making any request of the justice to reissue this warrant; but in that respect the justice disagrees with him, because, as I recall the justice's testimony, it was that Mr. Phillips said to him he wanted him to get that man or bring that man; and I think, perhaps, on more than one occasion; and Mr. Phillips's recollection was that the Justice had done it of his own volition, or at least he had no recollection of requesting it. What reason the justice could have for issuing the process a second time unless requested by the prosecutor, it is somewhat difficult to see, unless it might have been to recover his costs, because Mr. Wenger, it was that agreed, according to the statement of the arrangement made there, to pay the costs.

However, before issuing this process a second time, putting this warrant of arrest into the hands of the constable a second time, the squire had some doubt as to his legal right so to do; and he tells you that in the corridor of the courthouse here after this request had been made by Mr. Phillips he met the district attorney and asked him whether he could put this writ again into the hands of a constable, and have this man arrested or re-arrested, as he had not complied with the arrangements that had been made. The district attorney told him yes, that it was the same offense and that another complaint

was not necessary; that he could place the warrant in the hands of the constable again and have him arrested. He says nothing was said, or at least, nothing was testified to, showing that the statute of limitations was either spoken of or thought about by either party.

[If the warrant was placed in the hands of the constable under the direction of the district attorney, and without regard to Mr. Phillips's request or wishes, then he is not responsible for it if it was issued improperly after the two years had elapsed and this man was free; or if Mr. Phillips directed its issuance, and it was issued without regard to the advice of the district attorney, but solely upon his request, he is not liable to be mulcted in damages by this plaintiff here unless you have been satisfied by the evidence produced that Mr. Phillips, at the time he directed its issuance, knew that the statute of limitations had run and that it was a bar to the prosecution.] [3]

Plaintiff's points were as follows:

1. It is a misuse of the processes of the criminal law to attempt the collection of a debt thereby, and if the jury find that the defendant in this case did so attempt, it is evidence both of malice and want of probable cause, and they should give a verdict for the plaintiff for such damages as plaintiff has suffered by reason thereof. *Answer:* That point is refused because irrelevant. We do not recall any evidence of a process being used here for the collection of a debt, any criminal process. [5]

2. The fact that the plaintiff was arrested and then allowed to go at liberty for eight months more, on a promise to pay the debt due by him to defendant, and that then, not having paid the debt, he was arrested a second time, is evidence from which the jury may find the prosecution was instituted for the purpose of compelling payment of the debt, and if they so find, their verdict must be for the plaintiff. *Answer:* That is refused for the same reason. [6]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) that the charge was misleading; (2, 3, 4, 5) above instructions, quoting them.

*H. Frank Eshleman* and *William M. Hayes*, with them *A. E. Burkholder* and *J. Carroll Hayes*, for appellant.—Defendant is liable for misuse of criminal process ; this misuse, in the light of his knowledge, was malicious : Allison v. Rheam, 3 S. & R. 139 ; Berry v. Hamill, 12 S. &. R. 210 ; Sommer v. Wilt, 4 S. & R. 19 ; Muldoon v. Rickey, 103 Pa. 113 ; Barnett v. Reed, 51 Pa. 190 ; King v. Philipps, 6 East, 464.

*J. Frank E. Hause*, with them *Joseph H. Baldwin*, for appellee.—Where prior to the institution of a criminal prosecution, the advice of counsel learned in the law is sought and the facts are fully disclosed to him, and acting upon the advice received, a prosecution is instituted, such conduct rebuts the inference of malice : McClafferty v. Philp, 151 Pa. 86 ; Banhight v. Tammany, 158 Pa. 545.

OPINION BY MR. JUSTICE FELL, March 26, 1900 :

There is no ground for the complaint that the charge is inadequate and misleading. It contains a full and accurate statement of the law applicable to an action for malicious prosecution, and the questions of fact raised by the conflicting testimony were clearly and fairly presented to the jury.

The prosecution was commenced by advice of the district attorney. That this advice was sought in good faith and was based upon a full disclosure to him of all the facts known to the prosecutor was not controverted. That the binding over was after the prosecution was barred by the statute of limitations did not make the defendant liable unless it appeared that he had persisted in the prosecution after he knew it was barred. This did not appear, and there was nothing from which his knowledge could be inferred. The district attorney when consulted asked whether two years from the date of the commission of the offense had elapsed, but he made no explanation of the requirements of the statute, and did not inform the defendant that it was necessary that an indictment should be found within two years.

The plaintiff's first and second points for charge were properly refused for the reason that there was no evidence to sustain them. They might well have been refused for the reason that if the facts stated therein had been sustained by proof an

instruction for the plaintiff would not have been warranted. Proof that a criminal process had been made use of as a means for the collection of a debt is not conclusive in establishing the want of probable cause and the existence of malice. It.is prima facie only, and while sufficient to shift the burden of proof to the defendant it may be rebutted by other proofs: Prough v. Entriken, 11 Pa. 81; Schmidt v. Weidman, 63 Pa. 173.

The judgment is affirmed.