[No. B014827. Second Dist., Div. Three. Jan. 27, 1987.]

JACQUES INTERIORS, Plaintiff and Respondent, v.
EDWIN PETRAK et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to rule 976.1 of the California Rules of Court, it is ordered that the opinion be partially published and that the following portions be deleted from the published version: parts II, III and IV of the Discussion.

**COUNSEL**

Yusim, Stein & Hanger, , Charles L. Fonarow and Robert A. Morgenstern for Defendants and Appellants.

Bishton & Jurecka and Norris J. Bishton, Jr., for Plaintiff and Respondent.

**OPINION**

LUI, J.—

### SUMMARY

This appeal concerns the liability of a claims adjuster, Edwin Petrak (Petrak), hired by Sentry Insurance Co. (Sentry) to determine Sentry's contractual obligation as an insurer to the owners of a building damaged by fire. Petrak improperly concealed and distorted evidence regarding his investigation and Sentry, in reliance on the investigation, sued a tenant in the building, Jacques Interiors (Jacques), for subrogation.

During discovery for the subrogation action, what Petrak had done was revealed, and Sentry voluntarily dismissed its cross-complaint against Jacques. Jacques then sued Petrak and his company, Top Claims Service, Inc. (Top Claims),[1] for malicious prosecution.

Petrak and Top Claims appeal from a judgment of $150,000 in compensatory damages and $100,000 in punitive damages awarded against them in favor of respondent Jacques.

We conclude that there is substantial evidence supporting the jury's verdict that Petrak, with malice and without probable cause, was actively

---

[1]Petrak is vice president, director, and 40 percent shareholder of Top Claims. Hereafter, all references to Petrak refer to both Petrak and Top Claims.

instrumental in causing Sentry's action against Jacques to proceed, and we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

Petrak was employed by Sentry to adjust a fire loss in a building in which Jacques was a tenant. Sentry provided both fire and liability coverage to the building's owner, Holiday Investment Company (Holiday).

Petrak retained the services of Robert Lowe (Lowe), an independent fire investigator, to determine the cause of the fire. Shortly after Lowe began his investigation, he met with Petrak at the site, and pointed out "burn patterns" which indicated that the fire may have started in an area in the attic above Jacques's second floor suite (i.e., an area under the control of Holiday). Lowe told Petrak that there was no evidence the fire had started in an extension cord on the floor of Jacques's suite, as had been suggested by Los Angeles County Sheriff's Department arson investigator, Sergeant Francis, whose job was simply to determine whether or not the fire involved any criminal arson.

Upon receiving this information, Petrak ordered Lowe immediately to cease his investigation and to write a report that would not conflict with the conclusion of Sergeant Francis. Petrak also directed Lowe to send the 20 photographs Lowe had taken of the fire site separately from the report. Lowe prepared the report as instructed without indicating that the cause suggested by Sergeant Francis was incorrect, or that his investigation had been stopped prematurely. The language of the report was couched in such a way that the report could be used to support Sergeant Francis's opinion, even though Lowe totally disagreed with the opinion.

In order to protect himself, Lowe sent the report with a cover letter indicating that it was a "preliminary" report, and stating that the photographs were separate from the report, "which is not our usual reporting procedure." Lowe thereafter refused to accept assignments from Petrak.

Petrak forwarded Lowe's report to Sentry without informing Sentry that the report had been written at his direction after he had stopped Lowe's investigation. Sentry did not receive the photographs or the cover letter. Petrak used Lowe's report as a basis for subsequent communications with Sentry regarding a subrogation claim against Jacques. When Petrak put Jacques on subrogation notice, he stated: "*On the facts of the loss disclosed by our investigation,* we believe you are legally liable for the damage. [¶] If you are insured, please send this letter to your insurance carrier. If you are not insured, please contact us directly so that arrangements can be made for restitution." (Italics added.)

When the insurance company of another tenant in the building sued Holiday for subrogation and property damage, Sentry forwarded all reports and letters from Petrak to its attorney, John McCaskey (McCaskey), who began preparing a defense for Holiday and Sentry. When McCaskey learned that a faulty connection had been found on a Southern California Edison Company (Edison) power pole which might have caused the air conditioner above Jacques's suite to overheat, causing the fire, he retained experts to investigate. Lowe was also involved in this investigation, which concluded that there was a possible cause of action against Edison.

McCaskey filed cross-complaints against both Jacques and Edison. Subsequently, when discovery proceedings in the underlying action revealed what Petrak and Lowe had done, Sentry's cross-complaint against Jacques was voluntarily dismissed with prejudice, and Sentry compensated Jacques for the damages it suffered in the fire.

Jacques then brought an action against Petrak, Top Claims, and Lowe for malicious prosecution. At the close of Jacques's case, Petrak's motion for nonsuit was denied.

The jury awarded $150,000 in compensatory damages and $100,000 in punitive damages against Petrak and Top Claims. Lowe was exonerated.

Petrak's motions for judgment notwithstanding the verdict and for a new trial were denied.

CONTENTIONS ON APPEAL

Petrak contends: 1. Substantial evidence does not support the jury's finding of liability, since: (a) Sentry had probable cause to file the suit against Jacques, (b) Petrak had a sincere belief that the suit against Jacques was justified, and (c) Sentry's attorney did not rely on the actions of Petrak in deciding to file the suit against Jacques;

2. The trial court erred by allowing Jacques's attorney to place into evidence a memorandum he had written to his litigation file;

3. The trial court erred by intimidating the jury into withdrawing its request to have testimony reread after they began deliberating; and

4. The facts are insufficient to support an award of punitive damages.

DISCUSSION

I

*Substantial Evidence Supports the Verdict*

On appeal, "[a] judgment ... of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, p. 276, citing *Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58].)

"Where the evidence is in conflict, the appellate court will not disturb the verdict of the jury or the findings of the trial court. The presumption being in favor of the judgment ... the court must consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference, and resolving conflicts in support of the judgment." (9 Witkin, Cal. Procedure, *op. cit. supra*, § 278, p. 289, italics omitted.)

The elements of malicious prosecution, which Jacques was required to establish by a preponderance of the evidence, are: "(1) the institution of an action (2) without probable cause and (3) with malice, (4) termination of the action favorable to the defendant, and (5) resulting damage ...." (*Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029, 1036 [211 Cal.Rptr. 902].)

Petrak contends that there was insufficient evidence produced at trial to establish two of these elements: lack of probable cause and malice. Petrak also argues that, even if his conduct was wrongful, "there is not a shred of evidence to support the conclusion that Petrak ... *caused* the filing of the cross-complaint against Jacques," and thus the first element of the plaintiff's prima facie case was lacking. (Italics added.)

Considering the evidence in the light most favorable to Jacques and giving Jacques the benefit of every reasonable inference, we conclude that there was substantial evidence that Petrak, with malice and without probable cause, was actively instrumental in Sentry's decision to sue Jacques.

A. *Lack of Probable Cause*

The plaintiff alleging malicious prosecution must prove "that the *defendant* acted without probable cause." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 248, p. 2527, italics added.)

Probable cause, as it relates to the law of malicious prosecution, is "an *honest* suspicion or belief on the part of the instigator [of a civil proceeding], founded upon facts sufficiently strong to warrant a reasonable man in believing that the charge is true." (*Black* v. *Knight* (1919) 44 Cal.App. 756, 769 [187 P. 89], bracketed material and italics added; *Murdock* v. *Gerth* (1944) 65 Cal.App.2d 170, 178-179 [150 P.2d 489].)

Probable cause does not depend on the actual state of the case but rather on whether the one instigating the proceeding has knowledge, information, or facts sufficient to cause a reasonable person to believe honestly that the charge is true. (*Centers* v. *Dollar Markets* (1950) 99 Cal.App.2d 534, 540-541 [222 P.2d 136].)

Thus, the test for probable cause has both an objective and a subjective component. (See *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 55 [118 Cal.Rptr. 184, 529 P.2d 608].)

■ Petrak contends that "[t]he evidence presented before the trial court was insufficient to support the finding that the cross-complaint against Jacques Interiors was filed without probable cause [since] [t]he report by Sergeant Francis ... named Jacques as a party that potentially caused the fire of September 1, 1985 [*sic*]. This proved [*sic*] sufficient probable cause on which to base an action against Jacques ...."

Petrak's argument focuses exclusively on whether Sentry, through its attorney, McCaskey, had probable cause to file the suit against Jacques. However, the defendant in this case is Petrak, not Sentry, and we must view the evidence in the context of *Petrak's* state of mind and not that of Sentry or McCaskey.

If the jury believed that Petrak received from Lowe 20 photographs which clearly indicated that the fire did not start where Sergeant Francis said it started—and that Petrak concealed those photographs from Sentry—then the jury reasonably could have concluded that Petrak lacked the honest, subjective belief that grounds existed for suing Jacques at the time he filed his report which formed the basis for Sentry's subrogation claim against Jacques. The fact that Sergeant Francis's report might have provided probable cause for Sentry to sue is irrelevant, and cannot afford Petrak an absolute defense to a malicious prosecution action by Jacques if in fact Petrak's actions were wrongful.

■ "[E]ven where reasonable grounds for suspicion exist, sufficiently strong in themselves to warrant a cautious man's belief that there was probable cause for the prosecution, nevertheless, if it be apparent that the [defen-

dant] himself did not believe in the guilt of the accused, the circumstances relied on would not suffice to shield and vindicate him. [Fn. omitted.]" (6 Cal.Jur.3d, Assault and Other Wilful Torts, § 330, p. 553.)

## B. *Malice*

■ "Malice," as an element of a malicious prosecution cause of action, "is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily for an improper purpose." (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383 [295 P.2d 405]; *Centers v. Dollar Markets, supra,* 99 Cal.App.2d at p. 541.)

Malice may be proved directly, or it may be inferred from the fact that the defendant lacked probable cause. (See *Weaver v. Superior Court* (1979) 95 Cal.App.3d 166, 188 [156 Cal.Rptr. 745].)

The Restatement, in its analysis of the elements of malicious prosecution in the civil context, includes awareness that the claim is not meritorious (i.e., the subjective component of lack of probable cause) as an illustration of improper purpose, along with hostility, desire to force a settlement, and other improper motives. In connection with this illustration, the Restatement observes, "He cannot believe that the claim is meritorious . . . if he realizes that the adjudication will not be in his favor unless the court or jury is misled in some way." (Rest.2d Torts, § 676, com. c, pp. 462-463.)

■ Petrak argues that "the record is completely devoid of any evidence that establishes either bad faith or the absence of an honest and sincere belief that the prosecution was justified by the existent facts and circumstances. . . . Jacques [*sic*] and Top Claims as insurance adjusters had no motive to shift liability against or away from any party."

Since Petrak was working for Sentry, which provided both fire and *liability insurance* for the building owners, the jury reasonably could have believed that Petrak had a motive to shift liability for the fire away from the building owners and against the tenant, Jacques. Since there was evidence that Petrak withheld photographs which would have exonerated Jacques and implicated the building owners, the jury reasonably could have concluded that Petrak was participating in the subrogation action against Jacques for an improper purpose, with an awareness that the action would not be resolved in Sentry's favor unless the fact-finder was misled.

## C. *Proximate Cause and Independent Investigation*

■ "One may be civilly liable for malicious prosecution without personally signing the complaint initiating the . . . proceeding. If a person, without

probable cause and with malice, instigates or procures the [action], he is liable." (*Centers* v. *Dollar Markets, supra,* 99 Cal.App.2d at p. 544. See also *Blancett* v. *Burr* (1929) 100 Cal.App. 61, 62 [279 P. 668], holding that " '[i]t is enough if [the defendant] was instrumental in setting the law in motion and caused the [action] to proceed.' [Citation.]"; 54 C.J.S., Malicious Prosecution, § 14, p. 966, stating that "[t]he test of liability in an action for malicious prosecution is: Was defendant actively instrumental ... [or] the proximate and efficient cause of maliciously putting the law in motion[?]" (fns. omitted).)

■ Petrak notes that the suit against Jacques was filed after McCaskey had conducted his own investigation, and argues that "it is clear that [as a matter of law] one cannot be held liable for malicious prosecution if the action prosecuted is filed by an independent actor after his own investigation." In other words, Petrak contends that an investigation is always an intervening act which interrupts the causal chain between the defendant's acts and the harm. Petrak supports his contention by citing a series of cases.[2]

These cases are distinguishable from the present case. In our decision in *Stanwyck* v. *Horne, supra,* 146 Cal.App.3d 450, 461-462, for example, we emphasized that an important public policy concern underlies the decision to bar malicious prosecution suits against persons who complain to the State Bar about attorney misconduct, namely, maintaining public confidence in the legal profession. In this case, the policy concerns are quite different. Insurance adjusters who, without probable cause and with malice, submit distorted reports supporting lawsuits to shift liability away from their employers should not be allowed to insulate themselves from malicious prosecution actions by invoking the independent investigation rule.

In any event, McCaskey's investigation with respect to Jacques's liability differed from the "independent investigation" conducted in the cases cited by Petrak. Whereas those investigations focused on one possible defendant and resulted in exoneration of the defendant when exculpatory information was discovered, McCaskey's investigation was for the purpose of finding possible *additional* cross-defendants.

When McCaskey's investigation indicated that Southern California Edison might have been responsible for the fire, he was not forced to

---

[2]These cases include: *Hogen* v. *Valley Hospital* (1983) 147 Cal.App.3d 119 [195 Cal.Rptr. 5]; *Stanwyck* v. *Horne* (1983) 146 Cal.App.3d 450 [194 Cal.Rptr. 228]; *Miley* v. *Harper* (1967) 248 Cal.App.2d 463 [56 Cal.Rptr. 536]; *Brock* v. *Southern Pacific Co.* (1948) 86 Cal.App.2d 182 [195 P.2d 66]; and *Werner* v. *Hearst Publications, Inc.* (1944) 65 Cal.App.2d 667 [151 P.2d 308].

conclude that Jacques was not liable. Instead, as counsel for Sentry, he was free to cross-complain against both, since he had apparently adequate conflicting information (Petrak's report, which cited Sergeant Francis's report and attached Lowe's misleading report, without photographs) which indicated that Jacques might also be liable. With respect to that information, McCaskey did no independent investigation at all; he simply adopted Petrak's views.

Petrak notes that McCaskey testified on cross-examination that "based on Sergeant Francis' report *alone,* he would have filed a cross-complaint against Jacques regardless of what any other source told him," to avoid malpractice. (Italics in original.) Thus, Petrak contends, "there is not a shred of evidence to support the [jury's] conclusion that Petrak and Top Claims caused the filing of the cross-complaint against Jacques."

Petrak appears to be arguing that McCaskey's testimony on cross-examination regarding why he sued Jacques is a *fact* which the jury was not free to disbelieve based on other facts or inferences. This is not so. The jury had heard other testimony from McCaskey, on redirect examination, that he formed his initial opinion that Jacques should be sued after reading Petrak's report and a summary of Sergeant Francis's report, and that he "never waivered [*sic*] from that opinion up to and including the filing of the cross-complaint other than to come up with an alternative defendant in [Edison]."

The jury had been correctly instructed that "[a] proximate cause . . . is a cause which, in natural and continuous sequence, produces the injury, damage, loss or harm, and without which the injury, damage, loss or harm would not have occured." (BAJI No. 3.75) Having heard McCaskey's testimony on redirect examination (and knowing that immediately after the truth about Petrak's initial report and the photographs came to light, Sentry's cross-action against Jacques was dismissed), the jury could reasonably conclude that Petrak's actions "set the law in motion" and "in natural and continuous sequence" produced the harm that Jacques suffered. They could reasonably conclude that, had McCaskey been aware of Lowe's 20 photographs, and the fact that Lowe had disagreed with Sergeant Francis from the beginning, but had been told to write a misleading report, the case against Jacques would have been sufficiently weak that McCaskey would not have been concerned about malpractice. He would not have felt compelled to file the cross-complaint against Jacques.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Klein, P. J., and Hom, J.,† concurred.

Appellants' petition for review by the Supreme Court was denied April 1, 1987.

---

*See footnote, *ante,* page 1363.
†Assigned by the Chairperson of the Judicial Council.