1 Cal.Rptr.3d 484 (2003)
110 Cal.App.4th 60
Jerome ZAMOS, et al., Plaintiffs and Appellants,
v.
James T. STROUD, et al., Defendants and Respondents.
No. B160484.
Court of Appeal, Second District, Division Five.
July 1, 2003.
Rehearing Denied July 21, 2003.
Review Granted September 17, 2003.
*486 Law Offices of Jerome Zamos and Jerome Zamos, Woodland Hills, for Plaintiffs and Appellants.
Stroud & Do and James T. Stroud, Los Angeles, for Defendants and Respondents.
*485 MOSK, J.

INTRODUCTION
Plaintiffs and appellants Jerome Zamos and Odion L. Okojie (collectively Zamos) appeal from an order dismissing their malicious prosecution action against defendants *487 and respondents James T. Stroud, Van T. Do, Stroud & Do (we refer to these three defendants collectively as Stroud), Carl A. Taylor (Taylor), and Nancy M. Peterson (Peterson) (we refer to all of these defendants collectively as defendants) after the trial court granted defendants' motion to strike under Code of Civil Procedure section 425.16 (the anti-SLAPP motion). We hold that Zamos failed to meet their burden to demonstrate a reasonable probability that their malicious prosecution claim would succeed against Taylor and Peterson. We also hold that Zamos met their burden with respect to Stroud because we conclude that an attorney may be liable for malicious prosecution if the attorney continues to prosecute a lawsuit after discovery of facts showing that the lawsuit has no merit. In so determining, and in following the Restatement Second of Torts and California authorities, we disagree with recent Court of Appeal decisions holding that a malicious prosecution action can be based only on the filing of a lawsuit. Accordingly, we affirm the dismissal as to Taylor and Peterson, but reverse the dismissal as to Stroud.

BACKGROUND
The instant case for malicious prosecution is based upon a lawsuit (the fraud lawsuit) brought by Patricia Brookes (Brookes)who is named as a defendant in this case but is not a party to this appealagainst Zamos. Zamos had represented Brookes in another lawsuit (the foreclosure lawsuit) arising from the foreclosure on her house. Jerome Zamos and Odion L. Okojie practiced law together. Jerome Zamos was the attorney who primarily represented Brookes in the foreclosure lawsuit, although Okojie made some appearances in that case.
After a jury trial of the foreclosure lawsuit, when it appeared that the jury was deadlocked, Brookes settled the lawsuit against some of the defendants in that case in exchange for $250,000 paid by those settling defendants as damages for emotional distress. Out of that $250,000, Zamos received $83,333.33 as a contingency fee, and Brookes received $166,666.67. As part of the settlement, Brookes expressly released all claims to her house. The terms of the settlement agreement were stated on the record before the court at two separate hearings. Brookes appeared by telephone at the first hearing, held on October 27, 1995, and appeared personally at the second hearing, held on October 30, 1995.
Almost two years later, in 1997, Brookes sued Zamos for fraud, among other claims, based upon certain alleged representations Zamos made to induce her to settle the foreclosure lawsuit. Brookes alleged that Jerome Zamos told her that (1) he would continue to represent her (to judgment) against the non-settling defendants in the foreclosure lawsuit, (2) he would substitute into and represent Brookes in a malpractice lawsuit Brookes filed against her former attorneys (the malpractice lawsuit), (3) he would have her house returned to her, and (4) he would withdraw from representing her in the foreclosure lawsuit if Brookes did not accept the settlement. Brookes also alleged, among other things, that Mr. Zamos never intended to keep his first three promises and that Zamos withdrew from representing her against the non-settling defendants, never substituted into the malpractice lawsuit, and never tried to have her house returned to her.
Stroud represented Brookes in the fraud lawsuit. In October 1997, shortly after Brookes' fraud lawsuit was served on Odion Okojie, Zamos sent to Stroud reporter's transcripts of three hearings in the foreclosure lawsuit, which transcripts Zamos contended proved that Brookes' *488 fraud claim had no merit. The first two hearings reflected in the transcripts were those held on October 27, 1995 and October 30, 1995, and the transcripts show that Brookes was told and agreed that she was releasing all claims to her house and that Zamos would not substitute into the malpractice lawsuit. The third hearing, held on January 29, 1996, was a hearing on Zamos' motion to be relieved as counsel in the foreclosure lawsuit. During that hearing, Jerome Zamos explained that he had submitted all of the paperwork necessary for entry of default against the non-settling defendants, and the trial court explained to Brookes that Zamos would be relieved as counsel and that Brookes would be responsible for bringing the default to judgment. When the trial court asked Brookes whether "there [was] a problem" with relieving Zamos as counsel, Brookes responded, "No, not really." The transcript even shows that Brookes contended that Zamos was never her attorney of record, and she complained that Zamos forced her to come into court for the hearing; she asked the court, "Why couldn't he just send me whatever to be relieved of counsel?" A short time later, Brookes told the court, "I don't care if you sign him off or not. He's never been on."
After Stroud and Brookes refused to dismiss the fraud lawsuit against Zamos despite these transcripts, Zamos moved for summary judgment. In opposition to Zamos' motion for summary judgment, Stroud submitted a declaration signed by Brookes in which Brookes stated, among other things, that she agreed to settle the foreclosure lawsuit in reliance upon Zamos' promises to (1) continue representing her against the non-settling defendants, (2) represent her in the malpractice lawsuit, and (3) have her house returned to her. The trial court questioned whether Brookes could establish that she was damaged as a result of Zamos' alleged fraud, but the court nonetheless denied Zamos' motion, although it did so "reluctantly," finding that Brookes' declaration raised a triable issue of fact regarding whether Zamos made the alleged promises.
Brookes' fraud lawsuit proceeded to trial before a judge who had not been the judge in any of the other proceedings in that case. Before the trial began, the trial judge informed the parties that he had read the transcripts of the three hearings discussed above in preparation for ruling on several motions. Based on the judge's understanding of Brookes' anticipated testimony, he warned Mr. Stroud several times that he needed to advise Brookes of her Fifth Amendment rights and that he would notify the district attorney's office if Brookes' testimony at trial contradicted those transcripts because such testimony would be perjurious.
Taylor and Peterson testified at the trial. Apparently (although the record is not entirely clear), Brookes was unable to testify due to health reasons, and Zamos had to put on the defense before the plaintiffs case-in-chief was completed. When Brookes failed to appear after all other witnesses had completed their testimony, Stroud asked for a continuance to allow her an additional opportunity to appear. The trial court denied Stroud's request and granted Zamos' motion for a nonsuit. In granting the motion, the court found that, even if Brookes testified in accordance with the offers of proof that had been made, "no reasonable jury would ever provide a judgment for [Brookes]." In addition, the court found that, based upon the transcripts of the hearings regarding the settlement of the foreclosure lawsuit, Brookes' settlement of that lawsuit "acts as a bar probably in the form of estoppel to [Brookes' fraud lawsuit]."
*489 Following entry of judgment in the fraud lawsuit, Zamos filed the instant malicious prosecution action against Brookes, Stroud, Taylor, and Peterson. Zamos alleged on information and belief that Taylor encouraged Brookes to file the fraud lawsuit against Zamos and engaged Stroud to represent Brookes, and that Peterson urged Brookes to file the fraud lawsuit and gave false testimony to assist Brookes in prosecuting the lawsuit. Zamos also alleged that defendants prosecuted the fraud lawsuit to extort an unwarranted settlement by Zamos.
Stroud, Taylor, and Peterson filed a joint anti-SLAPP motion in which they argued that Zamos could not show a reasonable probability of success on the malicious prosecution claim. Stroud asserted that Zamos cannot show that the fraud lawsuit was brought without probable cause because Stroud's decision to file the action was based upon (1) Brookes' statements regarding Zamos' alleged promises; (2) corroboration by Peterson and, to a lesser degree, by Taylor; and (3) the timing of Zamos' alleged promises, Zamos' receipt of the contingency fee from the settlement, and Zamos' motion to be relieved as counsel in the foreclosure lawsuit. Taylor and Peterson asserted that Zamos cannot hold them liable for malicious prosecution because their sole involvement with the fraud lawsuit was as witnesses, and thus they are protected by the litigation privilege.
In opposition to the anti-SLAPP motion, Zamos presented evidence that shortly after the fraud lawsuit was filed Stroud received the transcripts that Zamos contended gave notice to Stroud that the fraud lawsuit had no merit. Zamos also presented evidence that Taylor sought counsel to represent Brookes in the fraud lawsuit and gave assistance to Stroud during Peterson's deposition. (Taylor graduated from law school, although apparently he is not a licensed attorney.) Zamos contended that this evidence shows that Taylor was actively involved in maliciously prosecuting the fraud lawsuit. Finally, Zamos presented evidence that Peterson was not present or within hearing distance when Jerome Zamos spoke with Brookes about the settlement agreement in the foreclosure lawsuit, and therefore Peterson is liable for malicious prosecution because her assertion that she heard Mr. Zamos make the alleged promises at issue in the fraud lawsuit was demonstrably false.
The trial court granted the anti-SLAPP motion as to all of the moving parties. As to Stroud, the court found that Stroud had probable cause to bring the lawsuit based upon Brookes' representations that were corroborated by Taylor and Peterson. The court held that Taylor and Peterson were immune from liability under the "common law witness immunity doctrine" set forth in Briscoe v. LaHue (1983) 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 and Silberg v. Anderson (1990) 50 Cal.3d 205, 214, 266 Cal.Rptr. 638, 786 P.2d 365. The court awarded $3,000 in attorney fees to Taylor and $3,000 in attorney fees to Peterson. Zamos timely appealed from the trial court's order dismissing the entire action against Stroud, Taylor, and Peterson and awarding attorney fees.

DISCUSSION

A. The Burdens on Anti-SLAPP Motions
Code of Civil Procedure section 425.16, the anti-SLAPP statute, provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the *490 court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) Under this statute, the party moving to strike a cause of action (here, defendants) has the initial burden to show that the cause of action "aris[es] from [an] act ... in furtherance of the [moving party's] right of petition or free speech." (Ibid.; Equilon Enterprises, LLC v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 67, 124 Cal.Rptr.2d 507, 52 P.3d 685 (Equilon); Mattel, Inc. v. Luce, Forward, Hamilton & Scripps (2002) 99 Cal.App.4th 1179, 1188, 121 Cal. Rptr.2d 794 (Mattel).) Once that burden is met, the burden shifts to the opposing party (here, Zamos) to demonstrate the "probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1); Equilon, supra, 29 Cal.4th at p. 67, 124 Cal.Rptr.2d 507, 52 P.3d 685.) The opposing party demonstrates a probability of prevailing by "presenting] evidence establishing a prima facie case which, if believed by the trier of fact, will result in a judgment for the plaintiff." (Mattel, supra, 99 Cal.App.4th at p. 1188, 121 Cal.Rptr.2d 794.)
The parties in this appeal concede that Zamos' malicious prosecution action arises from acts in furtherance of defendants' right of petition or free speech. (We note that this issuewhether a malicious prosecution claim can be subject to an anti-SLAPP motionis pending before the California Supreme Court in Jarrow Formulas, Inc. v. LaMarche, review granted June 12, 2002, S106503.) Thus, the issue in this case is whether Zamos presented evidence in opposition to defendants' anti-SLAPP motion that, if believed by the trier of fact, was sufficient to support a judgment in Zamos' favor. "The process the court uses in determining the merits of [an anti-SLAPP] motion is similar to the process used in approaching summary judgment motions" (Mattel, supra, 99 Cal.App.4th at p. 1188, 121 Cal. Rptr.2d 794), and whether Zamos has established a prima facie case is a question of law. (Wilson v. Parker, Covert & Chidester (2002) 28 Cal.4th 811, 821, 123 Cal. Rptr.2d 19, 50 P.3d 733 (Wilson) ["In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim"].)

B. Prima Facie Liability for Malicious Prosecution
It is well established that one who initiates a lawsuit without probable cause and with malice is liable for malicious prosecution.[1] (Bertero v. National General Corp. (1974) 13 Cal.3d 43, 50, 118 Cal.Rptr. 184, 529 P.2d 608; Mattel, supra, 99 Cal.App.4th at p. 1190, 121 Cal. Rptr.2d 794.) Thus, the party who brings the lawsuit (in this case, Brookes) can be liable if the lawsuit was brought with malice and without probable cause. But the attorneys who represent such a party (in this case, Stroud) also can be liable if, based upon the facts known to the attorneys, the attorneys had no probable cause to prosecute the lawsuiti.e., no reasonable attorney would have thought the lawsuit was tenable. (Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 886, *491 254 Cal.Rptr. 336, 765 P.2d 498 (Sheldon Appel).) Finally, one who is actively involved or "instrumental" in instigating the lawsuit (Jacques Interiors v. Petrak (1987) 188 Cal.App.3d 1363, 1371-1372, 234 Cal. Rptr. 44) or who "aids and abets a malicious prosecution [that] someone else has commenced" (Lujan v. Gordon (1977) 70 Cal.App.3d 260, 263-264, 138 Cal.Rptr. 654) can be liable for malicious prosecution. (See also Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50 Cal.3d 1118,1131, fn. 11, 270 Cal.Rptr. 1, 791 P.2d 587 (Bear Stearns).)

1. Liability for Continuing to Prosecute Lawsuit After Discovering Lack of Merit
Stroud contends on appeal that the trial court properly granted the anti-SLAPP motion as to Stroud in accordance with a recent decision by Division Seven of this Appellate District. Stroud asserts that under Swat-Fame, Inc. v. Goldstein (2002) 101 Cal.App.4th 613, 124 Cal.Rptr.2d 556 (Swat-Fame), the determination of probable cause must be made based upon the facts known to the attorney at the time the attorney filed the underlying lawsuit. Under Swat-Fame, if those facts are sufficient to constitute a cause of action, the attorney cannot be liable for malicious prosecution, even if the attorney subsequently discovers that those facts are not true but continues to prosecute the lawsuit. (Id. at pp. 627-629, 124 Cal.Rptr.2d 556; see also Morrison v. Rudolph (2002) 103 Cal.App.4th 506, 514, 126 Cal.Rptr.2d 747 [Division Three of the Fourth Appellate District relies on Swat-Fame to hold that the determination of whether a lawyer had probable cause to prosecute a lawsuit is limited to facts known to the lawyer at the time lawsuit was filed].)
Respectfully, we disagree with our colleagues in Division Seven. Instead, in conformity with Supreme Court dictum and the Restatement Second of Torts, we hold that an attorney may be liable for malicious prosecution if the attorney continues to prosecute a lawsuit after discovery of facts that establish that the lawsuit has no merit. (See also 2 Dobbs, The Law of Torts (2001) § 436, p. 1230 & fn. 19 [although a lawyer is not liable for filing a lawsuit that subsequently is shown to have no merit, "[o]nce investigation shows facts that eliminate reasonable grounds for suit, however, the lawyer must not continue the litigation"]; 1 Harper, et al., The Law of Torts (3d ed.1996) § 4.3, p. 4:13 ["Not only to instigate criminal proceedings but continuing to prosecute such proceedings maliciously after learning of their groundless nature will result in liability, although they had been begun in good faith and with probable cause"] and § 4.8, p. 4:60 & fn. 1 [noting that conditions necessary to support an action for malicious prosecution of a civil proceeding generally are the same as those necessary to support an action for malicious prosecution of a criminal proceeding, although there may be a slight difference in the treatment of probable cause].)
In reaching its contrary conclusion, the Swat-Fame court relied upon another decision from Division Seven, Vanzant v. DaimlerChrysler Corp. (2002) 96 Cal.App.4th 1283, 118 Cal.Rptr.2d 48 (Vanzant). In Vanzant, plaintiff Vanzant had been sued by defendant DaimlerChrysler for trademark infringement in the underlying action. Although DaimlerChrysler had obtained a judgment against Vanzant in that action, the judgment was reversed and judgment ultimately was entered in Vanzant's favor. Vanzant then sued Daimler-Chrysler and its attorneys for malicious prosecution, arguing that even though the original judgment in DaimlerChrysler's favor in the underlying action established *492 that the defendants had probable cause to initiate the action, the defendants lacked probable cause to continue to prosecute the action on remand after the judgment was reversed. The Court of Appeal affirmed the trial court's dismissal of Vanzant's malicious prosecution complaint, holding that there can be no liability for malicious prosecution for the "continuation of a properly initiated existing proceeding." (Id. at p. 1290, 118 Cal.Rptr.2d 48.)
The Vanzant court relied upon three cases for its holdingColeman v. Gulf Insurance Group (1986) 41 Cal.3d 782, 226 Cal.Rptr. 90, 718 P.2d 77 (Coleman), Merlet v. Rizzo (1998) 64 Cal.App.4th 53, 75 Cal.Rptr.2d 83 (Merlet), and Adams v. Superior Court (1992) 2 Cal.App.4th 521, 3 Cal.Rptr.2d 49 (Adams). Those three cases merely stand for the proposition that a malicious prosecution claim cannot be based upon allegedly frivolous procedural acts (such as bringing frivolous motions or applications, or filing a frivolous appeal) taken in a lawsuit for which there is probable cause. For example, in Coleman, there was no suggestion that the underlying lawsuit itself was brought or prosecuted without probable cause. Rather, the plaintiff alleged only that the appeal taken by the defendant was frivolous. (Coleman, supra, 41 Cal.3d at p. 793, 226 Cal.Rptr. 90, 718 P.2d 77.) The Supreme Court held that the plaintiff could not bring a malicious prosecution claim based upon the filing of a frivolous appeal because an appeal "cannot be considered a separate action `seeking affirmative relief....'" (Id. at p. 794, 226 Cal.Rptr. 90, 718 P.2d 77.) In Merlet, Division Two of the First Appellate District held that a malicious prosecution claim cannot be asserted against a party and the party's attorneys for filing an improper application for issuance of a writ of sale in an otherwise meritorious lawsuit, because the application is not an independent proceeding. (Merlet, supra, 64 Cal.App.4th at p. 63, 75 Cal.Rptr.2d 83.) And in Adams, the Sixth Appellate District held that bringing motions in pending lawsuits cannot give rise to a malicious prosecution claim because motions are not independent proceedings. (Adams, supra, 2 Cal.App.4th at p. 528, 3 Cal.Rptr.2d 49.) None of these cases addresses a situation in which an attorney continues a lawsuit after the attorney discovers that the lawsuit has no merit.
The court in Vanzant acknowledged that its holding is contrary to the position set forth in the Restatement Second of Torts, section 674 (section 674), that "[o]ne who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability." (Rest.2d Torts, § 674, italics added.) But the court stated that it was "aware of no California case adopting the Restatement position." (Vanzant, supra, 96 Cal. App.4th at p. 1290, fn. 3, 118 Cal.Rptr.2d 48.) In fact, the California Supreme Court has cited section 674 with approval, albeit in dictum, and has stated that "[a] person who is injured by groundless litigation may seek compensation from any person who procures or is actively instrumental in putting the litigation in motion or participates after the institution of the action." (Bear Stearns, supra, 50 Cal.3d at p. 1131, fn. 11, 270 Cal.Rptr. 1, 791 P.2d 587, italics added, citing section 674 as well as Jacques Interiors v. Petrak, supra, 188 Cal.App.3d at pp. 1371-1373, 234 Cal.Rptr. 44, Lujan v. Gordon, supra, 70 Cal.App.3d at p. 263, 138 Cal.Rptr. 654, and 5 Witkin, Summary of Cal. Law (1988) Torts, § 431, at p. 514.)[2] In addition, the Court of Appeal in *493 Curtis v. County of Los Angeles (1985) 172 Cal.App.3d 1243, 218 Cal.Rptr. 772 (Arabian, J.), in the context of determining whether Code of Civil Procedure section 1038 allows a governmental entity to recover defense costs from a party who continued to prosecute a civil action after learning that it had no merit, relied on section 674 and comment c to section 674, among other authorities, in concluding that an aggrieved party may bring a malicious prosecution action against one who continues to prosecute a civil action for an improper purpose after learning that there was no probable cause for the action. (Id. at pp. 1250-1251, 218 Cal.Rptr. 772.)
The court in Swat-Fame acknowledged the above language in Bear Stearns, supra, 50 Cal.3d at p. 1131, fn. 11, 270 Cal. Rptr. 1, 791 P.2d 587, and the two cases the Supreme Court cited to support it, Jacques Interiors v. Petrak, supra, 188 Cal.App.3d at pp. 1371-1372, 234 Cal.Rptr. 44 and Lujan v. Gordon supra, 70 Cal. App.3d at p. 263, 138 Cal.Rptr. 654. (Swat-Fame, supra, 101 Cal.App.4th at pp. 628-629, 124 Cal.Rptr.2d 556.) But the Swatr-Fame court fails to distinguish adequately Lujanthe case the Supreme Court cited in support of the statement in Bear Stearns regarding liability for participating in a meritless lawsuit after its initiation-on the ground that the underlying action in that case was initiated without probable cause.
First, in reversing a demurrer brought by a defendant in a malicious prosecution action, the Lujan court specifically said, "This case raises the issue whether an action for malicious prosecution may be maintained against a person who had no part in the commencement of the action, but who participated in it at a later time." (Lujan v. Gordon, supra, 70 Cal.App.3d at p. 262, 138 Cal.Rptr. 654.) The court determined that such an action could be maintained against a law firm that participated in a lawsuit only after it had been filed. Thus, contrary to Swat-Fame, the Lujan court held that the determination of whether a lawyer had probable cause to prosecute a lawsuit is not limited to facts known at the time lawsuit was filed.
Second, at the same time the Swat-Fame court affirmed the summary judgment in favor of the attorney defendants, it reversed the summary judgment in favor of the client on the ground that there were triable issues of fact regarding whether the client had probable cause to bring the underlying action. (Swat-Fame, supra, 101 Cal.App.4th at pp. 628-629, 124 Cal. Rptr.2d 556.) Thus, if it is determined that the client had no probable cause to initiate the lawsuit, the factual situation would be comparable to the factual situation in Lujan v. Gordon, supra, 70 Cal. App.3d at pp. 262-263, 138 Cal.Rptr. 654, in which the underlying lawsuit was brought without probable cause but a party who obtained knowledge of the lack of probable cause only after the initiation of the lawsuit was subject to liability for malicious prosecution. Lujan therefore stands for the proposition that it is not only knowledge of lack of probable cause at the initiation of the action that gives rise to liability, but that liability can also attach if the party obtains such knowledge at any time during the prosecution of the action.
This proposition is not, as the Swat-Fame court suggests, contrary to "[t]he long-standing rule in California ... that, if probable cause exists at the outset of the *494 action, the party acting with probable cause is insulated from liability for malicious prosecution." (Swat-Fame, supra, 101 Cal.App.4th at p. 628, 124 Cal.Rptr.2d 556, citing Hufstedler, Kaus & Ettinger v. Superior Court (1996) 42 Cal.App.4th 55, 66, 49 Cal.Rptr.2d 551 (Hufstedler).) The issue in Hufstedler was "whether the extent of the defendant-attorney's knowledge at the time the underlying lawsuit was filed is always relevant to the determination of probable cause." (Hufstedler, supra, 42 Cal.App.4th at p. 59, 49 Cal. Rptr.2d 551.) The Court of Appeal held that, if it is shown in a malicious prosecution action that the underlying lawsuit was tenable (i.e., had probable cause), "the nature and extent of the attorney's knowledge at the time the underlying action was filed is irrelevant." (Id. at p. 61, 49 Cal. Rptr.2d 551.) This holding does not conflict with our holding that an attorney who files a lawsuit and thereafter discovers that the lawsuit does not have probable cause is liable for malicious prosecution for continuing to prosecute the lawsuit following that discovery.
It makes little sense to hold attorneys accountable for their knowledge when they file a lawsuit, but not for their knowledge the next day. There is no logic in immunizing attorneys from liability for malicious prosecution simply because the attorneys think there is probable cause when they file the lawsuits, if shortly thereafter they discover the lawsuits have no merit but they continue to prosecute them. Holding attorneys liable for damages incurred after they learn that lawsuits have no merit is in keeping with the Supreme Court's explanation as to why malicious prosecution of a civil proceeding is actionable: "because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings." (Bertero v. National General Corp. (1974) 13 Cal.3d 43, 50-51, 118 Cal. Rptr. 184, 529 P.2d 608.)
Holding attorneys liable for the damages a party incurs as a result of the attorneys prosecuting civil claims after they learn the claims have no merit also will encourage voluntary dismissals of meritless claims at the earliest stage possible. Because an attorney will be liable only for the damages incurred from the time the attorney reasonably should have caused the dismissal of the lawsuit after learning it has no merit, an attorney can avoid liability by promptly causing the dismissal of, or withdrawing as attorney in, the lawsuit. This will assist in the efficient administration of justice and reduce the harm to individuals targeted by meritless claims. Moreover, by advising a client to dismiss a meritless case, the attorney will serve the client's best interests in that the client will avoid the cost of fruitless litigation, and the client's exposure to liability for malicious prosecution will be limited.
We recognize that malicious prosecution is a "disfavored cause of action." (Sheldon Appel, supra, 47 Cal.3d at p. 872, 254 Cal.Rptr. 336, 765 P.2d 498.) But the Supreme Court has warned that "`[t]his convenient phrase should not be employed to defeat a legitimate cause of action.... "[W]e should not be led so astray by the notion of a `disfavored' action as to defeat the established rights of the plaintiff by indirection; for example, by inventing new limitations on the substantive right, which are without support in principle or authority...."' " (Crowley v. Katleman (1994) 8 Cal.4th 666, 680, 34 Cal.Rptr.2d 386, 881 *495 P.2d 1083.) For well over a hundred years, aggrieved parties have had a right to bring a malicious prosecution action against another party for continuing to prosecute a lawsuit after learning there is no probable cause for that lawsuit. (See, e.g., Bicknell v. Dorion (1835) 33 Mass. (16 Pick.) 478; Wetmore v. Mellinger (Iowa 1883) 14 N.W. 722, 723; Wenger v. Phillips (1900) 195 Pa. 214, 45 A. 927.) This right has been recognized in case law in numerous jurisdictions (see, e.g., Korn v. Epstein (Pa.Super.1999) 727 A.2d 1130, 1133-1134; Smith v. Lucia (Ct.App.1992) 173 Ariz. 290, 842 P.2d 1303, 1308; Wroten v. Lenske (1992) 114 Or.App. 305, 835 P.2d 931, 933; Wilson v. Hayes (Iowa 1990) 464 N.W.2d 250, 264; Badell v. Beeks (1988) 115 Idaho 101, 765 P.2d 126, 128; Nelson v. Miller (1980) 227 Kan. 271, 607 P.2d 438, 447-448; Laney v. Glidden Co. (1940) 239 Ala. 396, 194 So. 849, 851-852) and, as stated above, in the Restatement and treatises (see, e.g., Rest.2d Torts, § 674; Dobbs, supra, § 436, p. 1230 & fn. 19; Harper, et al., supra, § 4.3, p. 4:13 & fn. 19). Accordingly, our holding here does not create a new tort remedy for litigation-related misconduct (see Cedars-Sinai Medical Center v. Superior Court (1998) 18 Cal.4th 1, 8-9, 74 Cal.Rptr.2d 248, 954 P.2d 511 [warning of the danger of creating new tort remedies]), but instead recognizes established rights of the plaintiffs and avoids placing new limits on those rights.
We stress that our holding is limited to cases in which the facts known to the attorney show that the case has no merit and there are no facts obtainable that would support the claim. Thus, we do not believe that our application of the malicious prosecution law will adversely affect an attorney's obligation to diligently represent the interests of a client (see Kotlar v. Hartford Fire Ins. Co. (2000) 83 Cal. App.4th 1116, 1123, 100 Cal.Rptr.2d 246 ["an attorney must represent his or her clients zealously within the bounds of law"]), because an attorney already is required by the Rules of Professional Conduct not to "assert a position in litigation ... without probable cause and for the purpose of harassing or maliciously injuring any person" (Rules Prof. Conduct, rule 3-200(A)), or "present a claim ... in litigation that is not warranted under existing law" (Rules Prof. Conduct, rule 3-200(B)).

2. Zamos' Case Against Stroud
In light of our holding that attorneys can be liable if they continue to prosecute claims after they discover they have no merit, in the present case we must determine whether Zamos presented evidence in opposition to Stroud's anti-SLAPP motion sufficient to show that Stroud had information at some point during the prosecution of the fraud lawsuit that established that Brookes' fraud claim lacked probable cause. Whether the facts known to Stroud constituted probable cause to prosecute the fraud lawsuit is a question of law. (Wilson, supra, 28 Cal.4th at p. 817, 123 Cal.Rptr.2d 19, 50 P.3d 733.) The court must "make an objective determination of the `reasonableness' of [Stroud's] conduct, i.e., to determine whether, on the basis of the facts known to [Stroud], the institution [and prosecution] of the [fraud lawsuit] was legally tenable." (Sheldon Appel, supra, 47 Cal.3d at p. 878, 254 Cal.Rptr. 336, 765 P.2d 498.) The test applied to determine whether a claim is tenable is "whether any reasonable attorney would have thought the claim tenable." (Id. at p. 886, 254 Cal.Rptr. 336, 765 P.2d 498.)
In the present discussed above, Stroud presented evidence in support of the anti-SLAPP motion to show that the facts available to Stroud at the *496 time the lawsuit was filed were sufficient to support a cause of action for fraud. But in opposition to the motion, Zamos presented evidence that Stroud was given transcripts shortly after the fraud lawsuit was filed that, Zamos contends, show that Stroud knew or should have known that the fraud lawsuit had no merit.
The transcript of October 30, 1995 settlement hearing in the foreclosure lawsuit establishes that Brookes could not have relied upon Zamos' alleged promise to represent Brookes in the malpractice lawsuit against her former attorneys. That transcript shows that before Brookes agreed to the settlement, Brookes and Zamos stated on the record that Brookes had changed her mind regarding Zamos' representation in the malpractice lawsuit and that Zamos was not going to represent Brookes in that lawsuit.
That same transcript also confirms that Brookes' fraud claim could not properly have been based upon another of Zamos' alleged promisesi.e., that Zamos would have Brookes' house returned to her. The October 30, 1995 transcript shows that Brookes was told repeatedly that she would be giving up all claims to her house if she agreed to the settlement. Therefore, Brookes could not have justifiably relied upon Zamos' alleged promise to continue prosecuting the claim for her house.[3] In light of the October 30, 1995 transcript, then, Stroud did not have probable cause to continue to prosecute the fraud claim based upon those two alleged promises. (See 5 Witkin, Summary of Cal. Law, supra, § 676 at p. 778 [elements of fraud are misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage].)
Although the transcript from the January 29, 1996 hearing on Zamos' motion to withdraw as counsel in the foreclosure lawsuit may not conclusively prove that Brookes did not rely upon the remaining alleged promisei.e., that Zamos would represent Brookes to judgment against the non-settling defendantsit suggests that she did not so rely. The January 29, 1996 transcript shows that Brookes did not object to Zamos withdrawing as counsel in the foreclosure lawsuit. Her lack of objection suggests that she did not rely upon Zamos' alleged promise to represent her to judgment against the non-settling defendants when she agreed to the settlement of the foreclosure lawsuit against the other defendants. Even if this transcript is not sufficient evidence by itself to establish that there was no probable cause to prosecute the fraud lawsuit based upon this alleged promise to represent Brookes against the non-settling defendants, Zamos presented additional evidence in opposition to the anti-SLAPP motion that shows that Stroud had no evidence to support the damage element of Brookes' fraud claim.
Zamos submitted the transcript from the hearing on Zamos' motion for summary judgment in the fraud lawsuit. The hearing was held almost two years after the fraud lawsuit was filed; trial of the lawsuit took place more than two years after the summary judgment motion was denied. During the summary judgment hearing in the fraud lawsuit, the trial court correctly noted that, to establish that she was damaged as a result of her reliance on Zamos' alleged promises that supposedly induced her to settle the foreclosure lawsuit, Brookes would have to show that she should have obtained a better result if she *497 had not agreed to the settlementi.e., if she had at that time continued to prosecute the foreclosure lawsuit. (See, e.g., Viner v. Sweet (2003) 30 Cal.4th 1232, 1241, 135 Cal.Rptr.2d 629, 70 P.3d 1046 [to establish damages as a result of wrongdoing related to a lawsuit, plaintiff must show that absent the wrongdoing, plaintiff should have obtained a better settlement or a better result at trial]; Orrick Herrington & Sutcliffe, LLP v. Superior Court (2003) 107 Cal.App.4th 1052, 1054, 132 Cal.Rptr.2d 658 [same]; Marshak v. Ballesteros (1999) 72 Cal.App.4th 1514, 1518-1519, 86 Cal.Rptr.2d 1 [same]; Mattco Forge, Inc. v. Arthur Young & Co. (1997) 52 Cal.App.4th 820, 840, 843, 60 Cal.Rptr.2d 780 [same].) The trial court asked Mr. Stroud to point to the evidence that shows that Brookes would have obtained a better result without the settlement. Although Mr. Stroud pointed out that Brookes' house was valued at more than $250,000, he could not point to any evidence to show that Brookes would have won the foreclosure lawsuit. Instead, Mr. Stroud could state only, "Well, you know, it is not clear that she would have won, but it is not clear that she could not have won."[4] This is insufficient to give rise to an actionable claim. (See In re Easterbrook (1988) 200 Cal.App.3d 1541, 1544, 244 Cal.Rptr. 652 ["the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable"]; Ventura County Humane Society v. Holloway (1974) 40 Cal.App.3d 897, 907, 115 Cal.Rptr. 464 ["it is blackletter law that damages may not be based upon sheer speculation or surmise"].) Moreover, at no time did Stroud suggest the possibility that any evidence could be obtained to establish damages.
In sum, Zamos produced evidence in opposition to the anti-SLAPP motion in the instant case that demonstrates that (1) within a few months after the fraud lawsuit was filed Stroud had information to show that Brookes' fraud claim had no merit with regard to two of the three alleged promises, and (2) two years into litigation of the fraud lawsuit, Stroud had no evidence to show that Brookes suffered damages resulting from her settlement of the foreclosure lawsuit in reliance upon any of Zamos' alleged promises. This evidence is sufficient to demonstrate that at least by the time of the summary judgment motion in March 1999, Stroud did not have probable cause to prosecute Brookes' fraud claim against Zamos.
Stroud argues, however, that under Roberts v. Sentry Life Insurance (1999) 76 Cal.App.4th 375, 90 Cal.Rptr.2d 408 (Roberts ), the trial court's order nevertheless must be affirmed because Zamos lost their motion for summary judgment in the fraud lawsuit. The Roberts court held that a favorable ruling on a motion for summary judgment in the underlying action conclusively establishes probable cause unless that ruling was procured by "materially false facts." (Id. at p. 384, 90 Cal.Rptr.2d 408.) But Zamos presented evidence in opposition to the anti-SLAPP motion that, if believed by the trier of fact, demonstrates that the denial of Zamos' summary judgment motion was procured by materially false facts. As discussed above, the trial court in the fraud lawsuit denied Zamos' motion for summary judgment "reluctantly," because Brookes' declaration that *498 Zamos made the representations at issue raised a triable issue of fact. In opposition to the anti-SLAPP motion in the instant case, Zamos presented the declaration of Jerome Zamos, in which Mr. Zamos states that he did not make the representations Brookes asserted he made. If the trier of fact in the instant case believes Mr. Zamos' declaration that he did not make those representations, then the denial of Zamos' summary judgment motion was procured by materially false facts, and the rule set forth in Roberts does not apply.
In addition to demonstrating that Stroud prosecuted the fraud lawsuit without probable cause, Zamos also produced evidence from which the trier of fact could conclude that Stroud prosecuted the fraud lawsuit with malice. The malice element of a malicious prosecution claim requires the plaintiff to demonstrate that the underlying action was prosecuted out of actual hostility, ill will, or with "a subjective intent to deliberately misuse the legal system." (Downey Venture v. LMI Ins. Co. (1998) 66 Cal.App.4th 478, 498-499, 78 Cal. Rptr.2d 142.) There is disagreement among courts of appeal regarding whether malice may be inferred solely from the lack of probable cause. (Compare, e.g., Mattel, supra, 99 Cal.App.4th at p. 1191, 121 Cal.Rptr.2d 794 [finding in underlying action that action was filed without probable cause is sufficient to demonstrate malice], with Downey Venture v. LMI Ins. Co., supra, 66 Cal.App.4th at pp. 498-499 & fn. 29, 78 Cal.Rptr.2d 142 [lack of probable cause, although relevant to determination of malice, is insufficient by itself to demonstrate malice].) In the present case, however, the conflict between the appellate courts is irrelevant because Zamos presented evidence in addition to the lack of probable cause from which a trier of fact could infer malice on the part of Stroud.
Stroud submitted a declaration in opposition to Zamos' motion for summary judgment in the fraud lawsuit that includes at least two statements that were demonstrably false. In that declaration, Brookes said that she relied upon Zamos' promises to represent her in the malpractice lawsuit and to have her house returned to her when she agreed to settle the foreclosure lawsuit. But, as discussed above, the transcript for the settlement hearing in the foreclosure lawsuit shows that Brookes could not have relied upon those alleged promises when agreeing to the settlement. Yet Stroud filed the declaration containing Brookes' false statements in order to defeat Zamos' summary judgment motion even though Stroud had a copy of this transcript for more than a year. That conduct could demonstrate "a subjective intent to deliberately misuse the legal system" and thus constitutes malice. (Downey Venture v. LMI Ins. Co., supra, 66 Cal.App.4th at pp. 498-499, 78 Cal.Rptr.2d 142.)
Because Zamos presented sufficient evidence establishing a prima facie case that, if believed by the trier of fact, will result in a judgment for Zamos against Stroud (Mattel, supra, 99 Cal.App.4th at p. 1188, 121 Cal.Rptr.2d 794), the trial court erred in its order granting Stroud's anti-SLAPP motion and dismissing Zamos' claim against Stroud. Accordingly, we reverse the order as to Stroud.

3. Zamos' Case Against Taylor and Peterson
As discussed above, the trial court granted the anti-SLAPP motion as to Taylor and Peterson on the ground that they were immune from liability under the common law witness immunity doctrine because their only involvement in the fraud lawsuit was as witnesses. The trial court was correct that a party whose only involvement *499 in an alleged malicious prosecution is as a witness is not liable even if that witness commits perjury while testifying. (See Cedars-Sinai Medical Center v. Superior Court, supra, 18 Cal.4th at p. 9, 74 Cal.Rptr.2d 248, 954 P.2d 511 ["we have held that there is no civil remedy in damages against a witness who commits perjury when testifying"]; accord, Temple Community Hospital v. Superior Court (1999) 20 Cal.4th 464, 469-70, 84 Cal.Rptr.2d 852, 976 P.2d 223.) Therefore, the court properly granted the anti-SLAPP motion as to Peterson because Zamos' claim against her is based solely on her participation as a witness in the fraud lawsuit.[5]
Zamos' claim against Taylor, however, is based upon conduct in addition to testifying as a witness. Nevertheless, the dismissal of Zamos' claim against Taylor was correct because Zamos did not present sufficient evidence in opposition to the anti-SLAPP motion to establish a prima facie case against him. Zamos presented Taylor's deposition testimony from the fraud lawsuit, in which Taylor stated that he found counsel (Stroud) to represent Brookes in bringing claims against Zamos. In addition, Jerome Zamos stated in his declaration filed in opposition to the anti-SLAPP motion that Taylor appeared to confer regularly with James Stroud during Peterson's deposition in the fraud lawsuit. He stated that Peterson's deposition was taken by Mr. Stroud at Taylor's office, and Mr. Zamos observed Taylor on several occasions enter the conference room where the deposition was held and hand pieces of paper to Mr. Stroud and Peterson, and that Mr. Stroud and Peterson appeared to refer to those papers during the deposition. Mr. Zamos also stated that he saw Mr. Stroud enter Taylor's private office during a recess and that Mr. Stroud and Taylor appeared to be reviewing a "checklist" that Mr. Stroud had been referring to during the deposition. This evidence, if believed by the trier of fact, tends to show that Taylor took an active role in the prosecution of the fraud lawsuit, beyond merely testifying as a witness.
This evidence does not show, however, that Taylor acted with malice in assisting the prosecution of the lawsuita necessary element in a malicious prosecution claim. (See Mattel, supra, 99 Cal. App.4th at p. 1190, 121 Cal.Rptr.2d 794.) Taylor states in his declaration that Brookes told him about the promises Zamos allegedly made to her to get her to agree to settle the foreclosure lawsuit. Thus, even if the trier of fact were to accept as true Zamos' evidence that Taylor took an active role in prosecuting the fraud lawsuit, there is no evidence that Taylor had any reason not to believe Brookes' statements regarding Zamos' alleged promises and therefore that he did not act in good faith. Although Taylor testified in the trial of the fraud lawsuit that Brookes gave him copies of the transcripts of the two settlement hearings and the hearing on Zamos' motion to withdraw as counsel in the foreclosure lawsuit, there is no evidence that Taylor read those transcripts and, if so, when he read them. Therefore, the trial court properly granted Taylor's anti-SLAPP motion and dismissed the claim against him.[6]

*500 C. Defendants' Request for Sanctions and Attorney Fees

In their respondents' brief, defendants ask this court to impose sanctions against Zamos for filing a frivolous appeal and to award defendants attorney fees for the appeal under Code of Civil Procedure section 425.16. In light of our reversal of the order dismissing the complaint against Stroud, the appeal as to Stroud was not frivolous; therefore, neither sanctions nor an award of attorney fees is appropriate. And although we affirm the judgment in favor of Taylor and Peterson, we hold that an award of sanctions for the appeal as to them also is inappropriate.
Under Code of Civil Procedure section 907 and California Rules of Court, rule 27, subdivision (e), an appellate court may impose sanctions against a party or an attorney for taking a frivolous appeal. In In re Marriage of Flaherty (1982) 31 Cal.3d 637, 183 Cal.Rptr. 508, 646 P.2d 179, the California Supreme Court addressed the standard for determining whether an appeal is frivolous and deserving of sanctions. The court instructed that sanctions "should be used most sparingly to deter only the most egregious conduct." (Id, at p. 651, 183 Cal.Rptr. 508, 646 P.2d 179.) It explained that "[a]n appeal that is simply without merit is not by definition frivolous and should not incur sanctions." (Id. at p. 650, 183 Cal.Rptr. 508, 646 P.2d 179.) Instead, "an appeal should be held to be frivolous only when it is prosecuted for an improper motiveto harass the respondent or delay the effect of an adverse judgmentor when it indisputably has no meritwhen any reasonable attorney would agree that the appeal is totally and completely without merit." (Ibid.)
Applying this standard, we cannot say that Zamos' appeal was frivolous because there is no indication that Zamos prosecuted the appeal for an improper purpose. Therefore, we decline to impose sanctions against Zamos for filing this appeal.
We are compelled by the language of Code of Civil Procedure section 425.16, subdivision (c), however, to hold that Taylor and Peterson are entitled to their attorney fees on this appeal. Section 425.16, subdivision (c), states: "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (Italics added.) Because Taylor and Peterson are prevailing defendants, they are entitled to the attorney fees attributable to their defense on appeal, in an amount to be determined by the trial court on remand.

DISPOSITION
The order dismissing Zamos' complaint against Carl A. Taylor and Nancy M. Peterson is affirmed. The order dismissing Zamos' claim against James T. Stroud, Van T. Do, and Stroud & Do is reversed. Carl A. Taylor and Nancy M. Peterson shall recover their costs and attorney fees on appeal, in an amount to be determined by the trial court on remand. Jerome Zamos and Odion L. Okojie shall recover their costs on appeal from James T. Stroud, Van T. Do, and Stroud & Do.
I concur: ARMSTRONG, J.
*501 GRIGNON, J., Dissenting and concurring.
I dissent from that portion of the majority opinion holding that an attorney may be liable for malicious prosecution even if, based on the facts known to the attorney prior to bringing an action, probable cause for a cause of action existed at the time the action was brought or initiated, if the attorney continues to prosecute the cause of action after discovering facts negating the cause of action. For the reasons so persuasively set forth in my colleagues' opinions in Swat-Fame, Inc. v. Goldstein (2002) 101 Cal.App.4th 613, 627-629, 124 Cal.Rptr.2d 556 and Morrison v. Rudolph (2002) 103 Cal.App.4th 506, 514, 126 Cal.Rptr.2d 747, I would hold that malicious prosecution liability may not attach for continuing a cause of action that was initially brought with probable cause. (See also Wilson v. Parker, Covert & Chidester (2002) 28 Cal.4th 811, 821-822 and fn. 6, 123 Cal. Rptr.2d 19, 50 P.3d 733.) I would affirm the Code of Civil Procedure section 425.16 order dismissing plaintiffs' malicious prosecution action against the Attorney Stroud defendants.
I concur in the majority opinion to the extent it affirms the Code of Civil Procedure section 425.16 order dismissing defendants Carl A. Taylor and Nancy M. Peterson.
GRIGNON, Acting P.J.
NOTES
[1] Whether prosecuting a lawsuit after it has been initiated can be a basis for a malicious prosecution action is discussed in section B.l. of this opinion.
[2] The page from Witkin's treatise that the Supreme Court cites with approval contains a quote from comment c to section 674: "`one who continues a civil proceeding that has properly been begun or one who takes an active part in its continuation for an improper purpose after he has learned that there is no probable cause for the proceeding becomes liable as if he had then initiated the proceeding.' " (5 Witkin, Summary of Cal. Law, supra, § 431 at p. 514, italics added.)
[3] In her declaration in opposition to Zamos' motion for summary judgment in the fraud lawsuit, Brookes stated that Zamos told her that the money she would receive in the settlement agreement would be for "`post eviction' " damages, and that "the claim for my house could still proceed."
[4] Mr. Stroud's uncertainty regarding the probable outcome of the foreclosure lawsuit is not surprising, given that Brookes had already lost the lawsuit before (when she was represented by counsel other than Zamos). Zamos represented Brookes in an appeal from that judgment, and obtained a reversal. When retried, it appeared that the jury was deadlocked, which prompted the settlement.
[5] Although Zamos argues on appeal that the claim against Peterson is based upon conduct in addition to testifying or providing declarations, the complaint contains only conclusory allegations of conspiracy, and Zamos presented no evidence of any other conduct by Peterson.
[6] Zamos contends in their appellants' opening brief that the dismissal of their claim should be reversed because they did not have an opportunity to conduct discovery to determine when Taylor received the transcripts. But Zamos failed to bring a noticed motion for discovery under Code of Civil Procedure section 425.16, subdivision (g), and therefore they waived that contention.