Filed 2/23/23  Saunders v. Ziprick & Associates CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| GEORGE SAUNDERS, Plaintiff and Appellant, v. ZIPRICK & ASSOCIATES, LLP et al., Defendants and Respondents. | D080077 (Super. Ct. No. CIVDS2019810) |

APPEAL from orders of the Superior Court of San Bernardino, Donald R. Alvarez, Judge.  Affirmed.

Law Offices of Raul B. Garcia and Raul B. Garcia; Law Office of Antoniette Jauregi and Antoniette Jauregui; and Raymond G. Ramirez for Plaintiff and Appellant.

Hammett & Galan and Erik J. Hammett for Defendants and Respondents.

George Saunders and Donald Paulson went into business together buying and selling real estate.  When disputes arose between them, Saunders sued Paulson to enforce payment on a promissory note, among other causes of action.  Paulson retained the law firm Ziprick & Associates LLP (Law Firm),

including attorneys Robert H. Ziprick (Robert), Jonathan R. Ziprick (Jonathan),[1] and William F. Ziprick (William), to defend the suit and file a cross-complaint against Saunders. Paulson also retained his accountant, Louise Woiteshek (Woiteshek), as an expert and percipient witness in the case.

After Saunders won favorable verdicts in two bifurcated trials, he brought a separate suit for abuse of process and malicious prosecution against Law Firm, attorneys Robert, Jonathan, and William, and accountant Woiteshek (collectively, defendants). Defendants filed a special motion to strike the complaint as a strategic lawsuit against public participation (SLAPP) on the grounds that it arose from protected litigation activity and lacked merit. In granting the motion, the trial court ruled that: (1) the action arose from protected litigation activity, (2) the abuse of process claim was barred by the litigation privilege, and (3) Saunders failed to demonstrate a probability of prevailing on the malicious prosecution claim. Saunders moved for reconsideration, and the trial court denied his motion.

Saunders contends on appeal that the court erred by granting defendants' anti-SLAPP motion and denying his motion for reconsideration. We conclude the trial court correctly ruled that Saunders's action arose from protected activity and that he failed to establish a probability of prevailing on either of his claims. We further conclude that Saunders failed to show there were any new or different facts that would justify reconsideration. Accordingly, we affirm.

---

[1]     Jonathan was not yet an attorney when the original suit and cross-complaint were filed by the parties.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Litigation*

In 2004, Saunders and Paulson agreed to purchase, develop, and sell properties together and split the profits. The parties did not reduce their agreement to writing or create a formal partnership entity. In early 2006, after the parties had purchased four properties, Saunders sought to exit the partnership. According to Paulson, their business relationship soured after Paulson discovered discrepancies in the accounting done by Saunders's wife (Dawn), who was initially in charge of the partnership's bookkeeping. After Paulson asked his accountant, Woiteshek, to review the partnership's financial records, the parties negotiated an agreement under which Paulson would pay Saunders $199,430.51, which was memorialized in a promissory note. In exchange, Saunders agreed to give up his interest in three of the four acquired properties.

However, Paulson never paid Saunders, and Saunders filed suit in late 2006 to recover the promissory note amount and seek other miscellaneous relief. Paulson retained Law Firm, with Robert as his attorney of record, to represent him in the suit. Paulson subsequently filed a cross-complaint against Saunders alleging, among other claims, that Saunders owed Paulson at least $65,000 in connection with diverted funds. Nearly four years later, after extensive discovery, Paulson filed a third amended cross-complaint against Saunders and his wife, alleging fraud and several other claims. Paulson, through counsel, deposed Saunders and his wife in connection with his cross-complaint and also retained Woiteshek as an expert and percipient witness. During that time, Law Firm attorneys Jonathan and William also assisted with preparing the case for trial.

3

Several years after Saunders first filed his original suit, he prevailed at the first phase of trial in 2013 to determine the enforceability of the promissory note. In the second phase in 2016, the court ruled mainly in favor of Saunders as to both his complaint and Paulson's cross-complaint, but concluded that Saunders did not prove his contract claims based on the promissory note. On cross-appeals by both parties, we reversed the judgment against Saunders on his contract claims, directed entry of judgment in his favor on those claims, and otherwise affirmed the judgment.

B. *Current Complaint*

In 2020, Saunders filed a complaint against Law Firm, Robert, William, Jonathan, and Woiteshek alleging abuse of process and malicious prosecution in one cause of action.[2] According to the trial court's description, the complaint alleged the following misconduct: (1) that Paulson perjured himself in the underlying litigation; (2) that Woiteshek testified falsely about Saunders and his wife diverting funds; (3) that the attorney defendants knowingly elicited perjured testimony and encouraged Paulson to sign a false declaration; and (4) that respondents were "conspirators" in a scheme to use the underlying litigation to help Paulson avoid payment and to "wear[] Saunders down financially."

Defendants filed an anti-SLAPP motion pursuant to California Code of Civil Procedure[3] section 425.16 on the grounds that the complaint arose from protected litigation activity and also lacked merit. Specifically, defendants argued that the abuse of process claim was barred by the litigation privilege.

---

[2] The current Saunders complaint is not included in the record on appeal.

[3] All further undesignated statutory references are to the Code of Civil Procedure.

4

(Civ. Code, § 47, subd. (b).) Defendants further argued that Saunders had no probability of success on his malicious prosecution claim because (1) a reasonable attorney would have believed probable cause existed for the causes of action in Paulson's cross-complaint, (2) defendants acted without malice, and (3) certain defendants had limited involvement in the underlying litigation.

In his opposition to the anti-SLAPP motion, Saunders submitted a declaration by his attorney, Raul Garcia, with no exhibits or documents attached. In Garcia's 16-page declaration, he purported to summarize facts known to him "based on [his] participation in depositions, exchange of discovery, participation in trials and appeals and review of depositions transcripts, trial transcripts and appellate opinions related to this case." Citing only to the declaration, Saunders argued there was no probable cause for defendants to initiate or continue prosecuting Paulson's cross-complaint because they purportedly knew that supporting testimony was false and certain claims were barred by statute. Saunders further argued that malice could be inferred from lack of probable cause.

The trial court granted the anti-SLAPP motion, finding first that Saunders's complaint arose from defendants' litigation of the underlying case, a protected activity. Relatedly, the court found that since the complaint only alleged conduct pertaining to the underlying suit, the litigation privilege was a complete bar to Saunders's abuse of process claim.

As to malicious prosecution, the court found that Saunders failed to demonstrate a probability of prevailing because the only evidence he submitted was Garcia's declaration, which was a mere "recitation of the unverified complaint's allegations" about which Garcia had no personal knowledge. The court also pointed out that there were no pleadings,

5

discovery, or trial transcripts submitted with the declaration to support its recitation of alleged facts. In contrast, the court noted that defendants submitted declarations with exhibits that tended to show, among other things, that there was probable cause to pursue Paulson's cross-complaint. The court further found that through their declarations, defendants demonstrated that William, Jonathan, and Woiteshek were not involved in initiating or maintaining the litigation to a degree that they would be liable for malicious prosecution.

Saunders moved for reconsideration, this time attaching an amended declaration from Garcia including exhibits. According to Garcia, he did not submit the exhibits with his original declaration because he "did not want to burden the record with an abundance of documents and exhibits." Saunders argued in his motion that the attachments, consisting of pleadings, deposition transcripts, discovery, and other documents, supported Garcia's recitation of the facts. Defendants argued in opposition that the court should deny the motion to reconsider because it was untimely, was not based on new or different facts as required by section 1008, and failed to give a satisfactory explanation for why the exhibits were not provided in the first instance.

The trial court denied Saunders's motion for reconsideration, finding that it was both untimely and without merit because each of the newly attached exhibits was part of the underlying litigation and could have been included with Garcia's initial declaration in response to the anti-SLAPP motion. The court also found that Garcia's desire to avoid "burden[ing] the record" was not a satisfactory explanation for why he failed to provide the exhibits earlier. Nonetheless, the court considered the exhibits and concluded that Saunders still had not shown a likelihood of success on his claims because the evidence did not show Paulson's cross-claims lacked

6

probable cause, nor did the evidence indicate that defendants acted with malice. Finally, the court again found that Jonathan, William, and Woiteshek had limited roles in the underlying litigation and could not be held liable for malicious prosecution.

Saunders timely appealed the orders granting defendants' anti-SLAPP motion and denying his motion for reconsideration.

DISCUSSION

I

*A. Statutory Framework*

The anti-SLAPP statute provides in relevant part that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike [anti-SLAPP motion], unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Ruling on an anti-SLAPP motion involves a two-step process: first the court must decide whether the defendant has shown the challenged claim arises from activity protected by the anti-SLAPP statute, and if so, the court then must decide whether the plaintiff has shown a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; *Sugarman v. Brown* (2021) 73 Cal.App.5th 152, 159.) Only a claim that both arises from protected activity and lacks merit is a SLAPP subject to being stricken. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*); *Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 282 (*Weeden*).)

*B. Protected Activity*

We review a ruling on an anti-SLAPP motion de novo and engage in the same two-step process as the trial court. (*Park v. Board of Trustees of*

7

*California State University* (2017) 2 Cal.5th 1057, 1067; *Weeden, supra*, 70 Cal.App.5th at p. 282.) Regarding the first step, it is undisputed that Saunders's abuse of process and malicious prosecution claims arise from protected speech or petitioning activity. According to the trial court, the complaint alleges that defendants committed misconduct preparing for and maintaining the underlying litigation. Because the complaint is not included in the record, we presume the trial court correctly characterized the complaint, and Saunders does not contest the court's finding on this prong. (See *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [appellant has burden of providing an adequate record, and failure to do so on an issue requires that the issue be resolved against appellant].)

"The constitutional right of petition encompasses ' " 'the basic act of filing litigation[,]' " ' " and a claim for relief filed in court is "indisputably . . . a 'statement or writing made before a . . . judicial proceeding[.]' " (*Navellier, supra*, 29 Cal.4th at p. 90, citing § 425.16, subd. (e)(1).) The litigated issues themselves need not be matters of public interest for the litigation to constitute protected activity. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123.) Accordingly, we conclude that the first prong of the anti-SLAPP statute is met.

*C. Probability of Prevailing on Abuse of Process Claim*

Turning to the second prong concerning Saunders's probability of prevailing, Saunders contends the trial court erroneously concluded that the litigation privilege bars his abuse of process claim. We disagree.

Civil Code section 47 bars civil actions for damages based on communications in any judicial proceeding, absent certain inapplicable statutory exceptions. (See *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 (*Hagberg*); *Daniels v. Robbins* (2010) 182 Cal.App.4th 204,

8

216 (*Daniels*).) The Supreme Court explained in *Hagberg* that the privilege prescribed by Civil Code section 47, subdivision (b) has been given broad application, and in light of important policy considerations, "without respect to the good faith or malice of the person who made the statement, or whether the statement ostensibly was made in the interest of justice, 'courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings.' [Citation.]" (*Hagberg*, at pp. 361, 372.) "Many cases have explained that [Civil Code] section 47[, subdivision] (b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit." (*Id.* at p. 361.) Moreover, "[t]he privilege has been applied specifically in the context of abuse of process claims alleging the filing of false or perjurious testimony or declarations." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058.)

According to the trial court and Saunders's brief, it appears that his complaint alleges misconduct based solely on the attorney defendants' actions in pursuing Paulson's claims, and Woiteshek's testimony at trial. There is no indication that Saunders alleges any non-communicative conduct by defendants that was unrelated to the pleadings and testimony in the underlying litigation. (See *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 118 [concluding litigation privilege barred plaintiff's claims because "the communicative conduct at issue—as established by the pleadings and documents submitted in connection with motions—was made in judicial or quasi-judicial proceedings"].) We therefore agree with the trial court and conclude that the

litigation privilege forecloses Saunders's abuse of process claim against defendants, which means Saunders has failed to meet his burden under the second prong of the anti-SLAPP statute for his abuse of process claim.

*D. Probability of Prevailing on Malicious Prosecution Claim*

Saunders also challenges the trial court's finding that he failed to show a probability of success on his malicious prosecution claim. We again find no error.

1.      *Admissibility of Attorney Garcia's Declaration*

Saunders first argues that the trial court erred by rejecting Garcia's original declaration submitted in opposition to the SLAPP motion on the ground that it would be inadmissible at trial. In contending that the court should have accepted Garcia's declaration, Saunders relies on the Supreme Court's opinion in *Sweetwater Union High School District v. Gilbane Building Company* (2019) 6 Cal.5th 931 (*Sweetwater*). In *Sweetwater*, a school district brought suit to void construction contracts allegedly procured by the defendants' bribery. In response to the defendants' anti-SLAPP motion, the school district submitted sworn statements about the bribery scheme from a related criminal proceeding—specifically, factual statements made under penalty of perjury in guilty and no contest pleas and grand jury transcripts. (*Id*. at pp. 937–939.)

After ruling that affidavits, declarations, and their equivalents may be submitted in opposition to a SLAPP motion, the Supreme Court concluded that the plea forms and grand jury testimony submitted by the school district were equivalent to affidavits or declarations because they were made under oath or penalty of perjury. (*Sweetwater*, *supra*, 6 Cal.5th at pp. 940–945.) The Court went on to confirm that evidence relied on by the plaintiff to defeat a SLAPP motion must "be admissible at trial." (*Id*. at p. 946.) " '[T]he proper

10

view of "admissible evidence" for purposes of the SLAPP statute is evidence which, by its nature, is capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule. Courts have thus excluded evidence which would be barred at trial by the hearsay rule, or because it is speculative, not based on personal knowledge, or consists of impermissible opinion testimony. This type of evidence cannot be used by the plaintiff to establish a probability of success on the merits because it could *never* be introduced at trial.'" (*Id*. at p. 947.)

The *Sweetwater* defendants argued that the plea forms and grand jury transcripts were inadmissible hearsay because there was no showing that the declarants were unavailable as witnesses, as required under the former testimony hearsay exception. (Evid. Code, § 1292; *Sweetwater*, *supra*, 6 Cal.5th at pp. 946–947.) The Supreme Court rejected this argument and held that "evidence may be considered at the anti-SLAPP stage if it is reasonably possible the evidence set out in supporting affidavits, declarations, or their equivalent will be admissible at trial." (*Sweetwater*, at p. 947.) The Court concluded that the statements contained in the plea forms and grand jury transcripts were "potentially admissible at trial" because "there is no categorical bar" to their admission, they "appear to be statements against interest" under Evidence Code section 1230, "there are no undisputed factual circumstances suggesting the evidence would be admissible at trial," and "it is not unreasonable to expect that those witnesses may be deposed and/or produced for trial." (*Id*. at p. 949.)

For several reasons, *Sweetwater* does not support plaintiff's argument that the court should have considered attorney Garcia's original declaration in opposition to the SLAPP motion. First, in *Sweetwater*, the plaintiff opposing the SLAPP motion submitted the actual sworn statements made by

11

the declarants in their grand jury testimony and plea forms. Here, by contrast, Garcia's 16-page declaration purported to summarize hearsay evidence known to him from discovery, deposition transcripts, trial transcripts, and appellate opinions in the underlying case, but none of the relevant supporting documents were attached to his declaration or submitted to the trial court. We cannot assess whether the facts asserted in Garcia's declaration would even be potentially admissible at trial without analyzing the specific underlying documents Garcia references in support of each assertion. *Sweetwater* does not allow a plaintiff to defeat a SLAPP motion by submitting a hearsay declaration of his own counsel summarizing facts from discovery, witness statements, or appellate opinions that are available to him but not submitted to the court. (See *Sanchez v. Bezos* (2022) 80 Cal.App.5th 750, 769–780 [rejecting "broad interpretation of *Sweetwater*" permitting use of any hearsay that can be cured by the time of trial].)

Second, in addition to being hearsay, Garcia's declaration is not competent evidence because it consists largely of unsupported speculation, allegations about which Garcia has no personal knowledge, and his own personal opinions or argumentative statements about the facts. For example, his declaration states: (1) "These claims were initiated by the defendants *who know the true facts. . . .* That information established that *there was no basis for suing* George Saunders and his wife Dawn Saunders"; (2) "The Attorney Defendants *knew of the fabricated testimony* regarding barter claims because the falsity of the testimony was revealed during discovery"; (3) "Offering perjured testimony surely constitutes wrongful use of civil proceedings"; (4) "The testimony of [Woiteshek] was perjured"; (5) "Paulson knew this testimony was false, [Woiteshek] knew the testimony was false, and the attorney defendants knew the testimony was false"; (6) "The attempt

12

to justify the lawsuit against [Saunders] exploded in Paulson's face, and is yet other evidence of the wrongful use of civil proceedings"; and (7) "They knew there was no documentation to back up the declaration, and yet elicited the fabricated testimony at trial."

We disregard such conclusory and argumentative statements at step two of the anti-SLAPP analysis, because they are not even potentially admissible at trial. (See *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26–27 [disregarding evidence in the SLAPP context that is "argumentative, speculative, impermissible opinion, hearsay, or conclusory"].) A plaintiff cannot defeat a SLAPP motion with self-serving opinions by his own attorney about what he believes the facts will prove.

Third, the trial court found that the declaration itself was merely "another recitation of the unverified complaint's allegations" about which Garcia had no personal knowledge. Because Saunders has failed to include his complaint in the appellate record, we must presume the trial court's finding to be correct. A plaintiff cannot rely solely on the allegations of the complaint to demonstrate a probability of prevailing. (See *Sweetwater*, *supra*, 6 Cal.5th at p. 940 ["As to the second step inquiry, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' [Citations.]"].) Nor can a plaintiff evade this rule by merely copying and pasting the allegations of the complaint into his own counsel's sworn declaration. (See *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 213 ["Once the court reaches the second prong of the analysis, it must rely on admissible evidence, not merely allegations in the complaint or conclusory statements by counsel."].)

13

In sum, Saunders did not meet his burden of demonstrating a probability of success. Saunders relied *solely* on attorney Garcia's hearsay and conclusory declaration in opposition to the SLAPP motion, without submitting any of the trial transcripts or discovery responses Garcia was purporting to summarize. (See *Sweetwater, supra,* 6 Cal.5th at pp. 938–939, 942.) At step two in the anti-SLAPP process, the plaintiff must make a prima facie showing of facts that would be sufficient to sustain a favorable judgment under the applicable evidentiary standard. (*Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 509 (*Padres*).) Because Saunders only proffered Garcia's inadmissible declaration to demonstrate a probability of prevailing on his malicious prosecution claim, he failed to meet his burden.

2.     *Probability of Proving Malice*

Even if we disregarded Garcia's clearly inadmissible opinions, but considered the other statements in his declaration purporting to summarize material produced in discovery and at trial in the underlying case, Saunders would still fall short of satisfying the second prong of the anti-SLAPP statute because his evidence is insufficient to demonstrate a probability of prevailing against defendants. (See *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1237.) To prevail in a malicious prosecution claim, the plaintiff must show the underlying action was: "(i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice." (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775–776.)

We focus our analysis on malice because if Saunders's evidence is insufficient to show a probability of proving that element, his malicious prosecution claim cannot succeed. In *Soukup v. Law Offices of Herbert Hafif*

14

(2006) 39 Cal.4th 260, the Supreme Court stated that the malice element of a malicious prosecution cause of action " 'relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.]  The motive of the defendant must have been something other than . . . the satisfaction in a civil action of some personal or financial purpose.  [Citation.]  The plaintiff must plead and prove actual ill will or some improper ulterior motive.' [Citations.]" (*Id.* at p. 292.)  Applying this standard, our task is to determine whether Saunders has presented sufficient evidence to establish a prima facie showing of malice by a preponderance of the evidence.  (See *Padres*, *supra*, 114 Cal.App.4th at p. 522 [at step two in anti-SLAPP analysis for malicious prosecution claim, plaintiff must make a prima facie showing that would permit a finding of malice based on preponderance of evidence standard]; *Jacques Interiors v. Petrak* (1987) 188 Cal.App.3d 1363, 1369, 1371 [applying a preponderance standard to the malice element of a malicious prosecution claim].)

While lack of probable cause is one factor in determining the presence of malice, it is insufficient to prove malice by itself.  (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1543.)  " 'In other words, the presence of malice must be established by other, additional evidence.' [Citation.]" (*Ibid.*)  Such other evidence is not limited to actual hostility or ill will, but also includes proceedings instituted primarily for an improper purpose, including when: " '(1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.' [Citation.]" (*Ibid.*)

15

Saunders argues that defendants acted with malice by knowingly preparing a false declaration for Paulson in which he stated he performed certain hours of labor several years after the fact. Saunders also asserts that defendants made claims against his wife solely for the improper purpose of wearing Saunders down, and that malice can be inferred from the fact that Paulson's claims lacked probable cause. But without attorney Garcia's conclusory opinions purporting to support these allegations of subjective bad faith, Saunders has failed to demonstrate a probability of proving malice.

First, excluding attorney Garcia's opinions, Saunders did not produce competent evidence that defendants knowingly fabricated Paulson's declaration. Garcia's declaration states that there was no documentation corroborating the labor estimates in Paulson's declaration and asserts that because Paulson had "memory problems," he could not have remembered the number of hours he worked over a decade later. While these assertions may be relevant to the weight a trier of fact might give to Paulson's declaration, they do not show that defendants acted with an improper purpose in seeking relief based on the declaration. As noted in the amended statement of decision from the 2016 trial, the parties did not dispute that Paulson rendered *some* labor and services at a non-partnership property owned by Saunders, even though the court ultimately rejected Paulson's claim for reimbursement.

As for Paulson's claims against Saunders's wife, Saunders provided no competent evidence indicating defendants' sole purpose in bringing claims against his wife was to "wear [him] down." In fact, deposition transcripts show that Saunders admitted funds were diverted from a partnership property to a non-partnership property, and that Dawn was handling the partnership's finances during that time. According to Robert's declaration

16

submitted in support of defendants' anti-SLAPP motion, Paulson told Robert he believed Saunders and his wife defrauded him, that Paulson wrote the promissory note under pressure from Dawn, and that the note was not the "final" agreement he had with Saunders.  This evidence indicates that defendants had probable cause to pursue at least some of Paulson's counter-claims against both Saunders and his wife based on the disputed promissory note and alleged diversion.  Saunders failed to submit any competent evidence to the contrary.

Second, and more importantly, lack of probable cause is by itself insufficient to prove malice, and Saunders has provided no competent evidence of malice beyond lack of probable cause.  Saunders relies on *MacDonald v. Joslyn* (1969) 275 Cal.App.2d 282 (*MacDonald*), to argue that lack of probable cause is sufficient to prove malice by inference.  But *MacDonald* predates the Supreme Court's decision in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863 (*Sheldon Appel*), which refocused the probable cause analysis and undercut the holdings of older cases that malice could be inferred solely from the absence of probable cause.  (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 498 (*Downey*).)  Under the *Sheldon Appel* standard, the existence of a *subjectively* "reasonable" or "honest" belief in the claim asserted became irrelevant to determining the existence of probable cause, which is now based on whether a claim is *objectively* tenable.  (*Downey*, at p. 498.)  Thus, "the conclusion that probable cause is absent logically tells the trier of fact nothing about the defendant's *subjective* state of mind[,]" which is what malice is based on.  (*See ibid.*, italics added.)

While malice is usually proved by circumstantial evidence and may still be inferred when a party *knowingly* brings an action without probable cause, there is neither circumstantial nor direct evidence (aside from conclusory

17

assertions by attorney Garcia) that defendants acted with an improper purpose, or *knowingly* brought baseless claims. (See *Padres*, *supra*, 114 Cal.App.4th at p. 522.) Even when evidence from discovery does not support the claims in an underlying action, this does not, on its own, support a finding of malice for anti-SLAPP purposes. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 743 [" 'Merely because the prior action lacked legal tenability, as measured objectively . . . *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind.' [Citation.]"].) And even if we could infer from the record that defendants failed to adequately investigate Paulson's and Woiteshek's factual assertions, evidence of their "possible negligence in conducting factual research is also not enough on its own to show malice."[4] (*Daniels*, *supra*, 182 Cal.App.4th at p. 225.)

Ultimately, it is Saunders's burden to show a probability of success on his malicious prosecution claim, and he has failed to establish a prima facie showing of malice, even taking into account the portions of Garcia's declaration that are not his own inadmissible opinions and speculation. Unlike in other cases where courts have found a sufficient showing of malice,

---

4    At oral argument, Saunders argued that Paulson's claim for an offset based on a check he wrote for approximately $5,000 was groundless because the check was never cashed and Woiteshek actually had it in her possession. According to Saunders's opening brief, Woiteshek knew the check was never cashed, and her knowledge could be imputed to the other defendants. But without additional evidence in the record that the defendants acted with an improper purpose or subjectively knew the claim was baseless—as opposed to acting with a lack of diligence or failing to properly investigate—we conclude that the circumstances surrounding the check are not, by themselves or in combination with any other evidence, sufficient to establish a prima facie showing of malice.

there is no competent evidence that defendants had an improper purpose in initiating and maintaining Paulson's cross-complaint. (See, e.g., *Daniels*, *supra*, 182 Cal.App.4th at p. 225 [concluding the record "clearly supports an inference that" client defendant brought underlying case with malice because "his personal relationship with and alleged threats to" plaintiff suggested his subjective intent "may have been to exact revenge on" plaintiff]; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218 [malice "can exist, for example, where the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim"]; *Padres*, *supra*, 114 Cal.App.4th at p. 522 [plaintiff proved malice where defendant repeatedly filed actions in order to interfere with a business project].)

Because Saunders has not met his burden of showing a probability of proving that defendants acted with malice, we need not reach the merits on the remaining elements. We conclude that the trial court correctly granted defendants' anti-SLAPP motion.

II

Saunders also appeals the trial court's denial of his motion for reconsideration, arguing that his motion was timely and that the exhibits attached to Garcia's amended declaration were "new" facts justifying reconsideration. Regardless of whether Saunders's motion was timely, we conclude that the exhibits did not constitute "new" facts, so the trial court properly denied his motion.

A party seeking reconsideration of a court's order under section 1008 must show the existence of new or different facts, circumstances, or law, and explain why they were not produced at the original hearing. (*The New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) "The burden

19

under section 1008 is comparable to that of a party seeking a new trial on the ground of newly discovered evidence: the information must be such that the moving party could not, with reasonable diligence, have discovered or produced it" at the original hearing. (*Id.* at pp. 212–213.) We review the court's ruling on a motion for reconsideration under an abuse of discretion standard. (*Id.* at p. 212; *Yolo County Dept. of Child Support Services v. Myers* (2016) 248 Cal.App.4th 42, 50.) Accordingly, whether Saunders proffered new or different facts sufficient to satisfy the requirements of section 1008 is a "question confided to the sound discretion of the trial court, with the exercise of which [the appellate court] will not interfere absent an obvious showing of abuse." (*Graham v. Hansen* (1982) 128 Cal.App.3d 965, 971.)

Here, the trial court did not abuse its discretion because all of the exhibits attached to Garcia's amended declaration were not new and could have been submitted with Saunders's opposition to defendants' anti-SLAPP motion. Saunders concedes in his opening brief that "Garcia made no statement of fact that was not based on discovery responses, deposition testimony, trial testimony, or rulings and judgments in the underlying action." Rather than dispute that the exhibits existed at the time defendants filed their motion and could have been submitted earlier, Saunders instead insists that he did not submit them because of a misplaced reliance on *Sweetwater* and because Garcia did not want to "burden the record" with documents. Neither is a proper basis for reconsideration. A party's mistaken belief that certain evidence was not necessary at a hearing does not entitle him to reconsideration. (See *Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 692, fn. 6 [plaintiff's belief that certain evidence was not necessary at summary judgment hearing insufficient to justify reconsideration].) Nor does an abstract concern about burdening the record

20

excuse the failure to submit evidence in the first instance.  Accordingly, we affirm the trial court's denial of Saunders's motion for reconsideration and decline to address the court's other grounds for denying the motion.

## DISPOSITION

The orders granting the anti-SLAPP motion and denying the motion for reconsideration are affirmed.  Respondents shall recover their costs on appeal.


BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.